A02A1766. JENKINS v. THE STATE.
(576 SE2d 300)

BARNES, Judge.

After a bench trial, Buddy Lee Jenkins was convicted of two burglary counts and one count of possession of tools for the commission

---

of a crime and acquitted of entering an auto intending to commit a theft. He appeals, arguing that the trial court erred in failing to protect his right to a jury trial, and insufficient evidence supports his convictions for illegal tool possession and one of the two burglary counts. Because the record contains no evidence that Jenkins personally and intelligently participated in the decision to waive his right to a jury trial, we must vacate the convictions and remand for further proceedings on one of the burglary counts and the illegal tool possession count. A review of the record reveals that the State presented insufficient evidence to support one of the burglary convictions, however, and we therefore direct the trial court to enter an acquittal on the count alleging burglary of a camper.

1. Jenkins waived his arraignment, and the only evidence in the record regarding Jenkins' jury trial waiver consists of two forms, one signed by Jenkins and his first trial counsel and one signed only by that counsel four months later. The forms are titled "Waiver of Trial by Jury," and consist of one sentence each: "Comes now the defendant above-named and herein waives his right to a Trial by Jury and makes his/her request for a trial by the Court" or "makes his request for a non-jury." The trial transcript includes no pre-trial colloquy and no reference at all to a jury trial or bench trial; instead, the trial court calls the case, the parties waive opening, and testimony begins.

> A defendant's right to trial by jury is one of those fundamental constitutional rights that the defendant must personally, knowingly, voluntarily, and intelligently choose to waive. A trial court should ask the defendant sufficient questions on the record so that the court can ensure the defendant's waiver is knowing, voluntary, and intelligent.

(Footnotes omitted.) *Watson v. State*, 274 Ga. 689, 691 (2) (558 SE2d 704) (2002). While the record in this case contains some indication — the forms — that Jenkins waived his right to a jury trial, there is no evidence he did so knowingly, voluntarily, and intelligently. " 'When the purported waiver of this right is questioned, the State bears the burden of showing that the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.' [Cit.]" *Jones v. State*, 212 Ga. App. 676, 679 (2) (442 SE2d 908) (1994).

Although Jenkins did not file a motion for new trial, and his appellate counsel has raised this claim for the first time on appeal, the right to a jury trial is a constitutional issue which defendants may raise for the first time on appeal. *Wooten v. State*, 162 Ga. App.

719 (293 SE2d 11) (1982). In this case, as in *Wooten* and *Whitaker v. State*, 244 Ga. App. 241, 243-244 (4) (535 SE2d 283) (2000), the record is incomplete. The burden is on the State to show that Jenkins knowingly, voluntarily, and intelligently waived this right. *Balbosa v. State*, 275 Ga. 574 (571 SE2d 368) (2002). "Because [Jenkins] failed to raise this issue in the trial court, the State has not had an opportunity to fill the incomplete record with extrinsic evidence sufficient to meet its burden. The record contains some evidence of a waiver but does not show whether [Jenkins] personally, voluntarily, knowingly, and intelligently participated in it." *Whitaker*, supra, 244 Ga. App. at 244. We therefore vacate Jenkins' convictions.

2. That does not end our inquiry, however, because Jenkins also contends that the trial court erred in denying his motion for directed verdicts on the charges of possession of burglary tools and burglary of a camper for insufficiency of evidence. If the evidence was insufficient, the State is then barred from retrying these charges to a jury if Jenkins is entitled to a jury trial.

> The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow the State to make repeated attempts to convict an individual for an alleged offense, since the constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.

(Citations and punctuation omitted.) *Burks v. United States*, 437 U. S. 1, 9-10 (98 SC 2141, 57 LE2d 1) (1978). " 'The general rule is that the retrial of the defendant is not barred where reversal of the conviction results from trial error rather than evidentiary insufficiency.' " *Nance v. State*, 274 Ga. 311 (553 SE2d 794) (2001).

Because the reversal in this case stems from a trial error rather than evidentiary insufficiency, normally Jenkins could be retried on all three counts if the trial court determines that he did not properly waive his right to a jury trial. If the State presented insufficient evidence to sustain any of the convictions, however, Jenkins cannot be retried on those counts.

Viewed in the light most favorable to the verdict, the evidence at trial established that Jenkins' next-door neighbor was awakened by Jenkins' dogs barking in the middle of the night. The neighbor went to the window and saw Jenkins crossing the street toward his house with what looked like dishwashing gloves on his hands. She went

back to sleep, and the dogs woke her again sometime after 3:00 a.m. She saw Jenkins crossing from his side of the street, and she woke her roommate up. The two watched out their front window as Jenkins went up the steps of the house across the street, broke the door window, and entered the house. Someone else was with Jenkins, whom she could not identify, but she was positive about identifying Jenkins. The roommate called the police, who arrived within ten minutes.

The first police officer on the scene spoke to the neighbor and roommate, who identified Jenkins as one of the people they saw breaking into the house across the street. The officer's lieutenant arrived and saw that the back door of the house across the street was open and two men were hiding behind a car. One of the men jumped a fence and ran away; Jenkins was found hiding under a car, with a flashlight and a pair of socks. Jenkins identified his co-defendant, who was found hiding in the bushes up the street. The co-defendant had in his possession a box cutter, a sheathed knife, two pocket-knives, and a screwdriver.

A third backup officer testified that Jenkins consented to a search of his van, parked in his driveway, which contained an auto buffer, hunting vest, fishing poles, speakers, two chain saws, and a winch that the victim identified as his, among other things. The co-defendant, who was also Jenkins' brother-in-law, testified that he and Jenkins had been drinking all day and both decided to break into the house across the street because they needed some money. Jenkins carried a flashlight with him. According to the co-defendant, the window in the house was already broken, and Jenkins just reached inside to unlock the door. The two carried items from the house to Jenkins' van and also entered a camper parked on the premises. The co-defendant identified a carpet knife that the police took from him when he was arrested, saying he used it in his line of work, always carried it with him, and did not use it the night of the burglary.

The victim testified that he owned the house and camper Jenkins had entered, but had not lived in the house for about a year. He did not give Jenkins authority to enter the house. Some of the items taken from his house included an air compressor, fishing equipment, and tools. The back window on the camper had been broken out, the stereo and some clothes were missing, and the winch was gone from his pickup truck.

We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Jenkins guilty beyond a reasonable doubt of Count 1, burglary by entering the dwelling house of another without authority and with the intent to commit theft. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(a) Count 4 charges Jenkins with possession of tools for the commission of a crime for having "devices commonly used in the commission of a burglary, to wit: socks, screwdriver, box cutter, knife and a flashlight, with the intent to make use thereof in the commission of said crime." OCGA § 16-7-20 (a) provides that "[a] person commits the offense of possession of tools for the commission of crime when he has in his possession any tool, explosive, or other device commonly used in the commission of burglary, theft, or other crime with the intent to make use thereof in the commission of a crime."

The State presented no evidence that Jenkins had a screwdriver on him when he was arrested, and no evidence that the co-defendant's knife or box cutter is commonly used to commit a crime or was used in this burglary. It did establish, however, that Jenkins had a flashlight with him when arrested, and Jenkins' co-defendant testified that Jenkins took the flashlight with him when the two men entered the house to commit the burglary. This evidence is sufficient to sustain the conviction for possession of tools for the commission of a crime. See *Moton v. State*, 256 Ga. App. 594 (1) (569 SE2d 264) (2002) (screwdriver, gloves, and damaged steering column sufficient); *Thompson v. State*, 237 Ga. App. 91, 92 (1) (514 SE2d 870) (1999) (ski mask, gloves, plastic bags similar to one found inside store, and duct tape used to cover license tag sufficient); *Moore v. State*, 197 Ga. App. 9 (1) (397 SE2d 477) (1990) (screwdriver, gloves, flashlight, and pry marks on door sufficient).

(b) Count 2 charges Jenkins with burglary by entering a camper designed for use as a dwelling house without authority and with the intent to commit theft. OCGA § 16-7-1 (a) defines "burglary" as entering or remaining "within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another . . ." without authority and with the intent to commit a felony. While the indictment properly charged Jenkins with entering a camper "designed for use as a dwelling house," see *DeFrancis v. Manning*, 246 Ga. 307 (271 SE2d 209) (1980), the State presented no evidence at trial that this particular camper was so designed. It argues that the victim's testimony that a stereo and clothes had been taken from the vehicle, coupled with the dictionary definition of "camper" as "a vehicle affording shelter and usually sleeping accommodations for travelers and campers," constitutes sufficient evidence to sustain the conviction. We disagree. A vehicle designed for use as a dwelling house is not necessarily the same thing as a vehicle affording shelter and sleeping accommodations, and in the absence of even a bare description of the camper in this case, we cannot conclude that the State presented sufficient evidence to convict Jenkins on this burglary count.

We therefore reverse the conviction on this count and instruct

the trial court upon remand to enter a verdict of acquittal. As to the burglary of a house and illegal tool possession charges, we further instruct the trial court to conduct a hearing and determine whether Jenkins personally, knowingly, voluntarily, and intelligently participated in waiving his right to jury trial; if not, the trial court shall grant Jenkins a new trial on those two counts. If, however, the trial court determines that Jenkins made a valid waiver, the conviction may be reinstated and an appropriate sentence on the burglary of a house and illegal tool possession charges may be entered. Jenkins will then have the opportunity to file a new appeal directed to this issue alone. *Whitaker*, supra, 244 Ga. App. at 244.

*Judgment reversed in part and vacated in part and case remanded with direction. Ruffin, P. J., and Pope, Senior Appellate Judge, concur.*

DECIDED DECEMBER 23, 2002.

*Joshua D. Earwood*, for appellant.

*T. Joseph Campbell, District Attorney, Minerva S. Cansino, Assistant District Attorney*, for appellee.