A09A1402. VERDREE v. THE STATE.
(683 SE2d 632)

ELLINGTON, Judge.

In June 2000, a Richmond County jury found Jamie Verdree guilty of multiple counts of armed robbery, aggravated assault, kidnapping, possession of a firearm during the commission of a crime, and use of a firearm by a convicted felon. Verdree's counsel filed a timely motion for new trial, but the trial court did not conduct a hearing on the motion until July 2008 and did not issue a ruling denying the motion until February 2009. Verdree appeals, contending the trial court erred in admitting testimony that violated his constitutional right to confrontation, erred in admitting other evidence, gave the jury an improper instruction, and improperly sentenced him. He also argues that the eight-year delay between his motion for new trial and the hearing thereon violated his due process rights, that he received ineffective assistance of trial and appellate counsel, and that the evidence was insufficient to support his convictions. For the following reasons, we reverse the denial of Verdree's motion for new trial and remand this case to the trial court.

Viewed in the light most favorable to the jury's verdict,[1] the evidence presented showed that someone committed three armed robberies of Taco Bell restaurants in Augusta between November 1997 and March 1998. During each of the robberies, the robber

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

walked into the restaurant as soon as it opened, threatened the restaurant employees with a silver handgun, forced them into the walk-in refrigerator, ordered an employee to open the safe and give him the keys to the registers, and then fled the scene with cash. Several of the victims of the first two robberies testified that, although the robber had part of his face covered with a stocking cap, they could see that the robber appeared to be missing a front tooth. Investigators also obtained surveillance videotapes of each of the robberies and were able to extract still photographs of the robber's face from the videotapes of the last two robberies.

Based on information obtained from a variety of sources, an investigator with the Richmond County Sheriff's Department began to focus his investigation on Jamie Verdree and obtained a search warrant for Verdree's mother's home. While executing the warrant, the investigator showed Ms. Verdree still photographs from the robberies and asked her if the pictures were of Jamie Verdree or one of Verdree's two brothers. Ms. Verdree replied that Jamie and one of his brothers were identical twins, but she could tell the man in the pictures was Jamie, because he was the twin who had a broken front tooth and she could see the broken tooth in one of the pictures.

Investigators then secured an arrest warrant for Verdree in connection with the March 1998 armed robbery, and they went to the house he shared with his girlfriend. Before knocking on the door, the officers could see Verdree through a window, standing with his girlfriend, Constance Scott, and his cousin, Wayne Roberts. After Scott answered the door, however, both she and Roberts told the officers that Verdree was not there. Scott consented to a search of the house, and the officers eventually found Verdree hiding in the attic. They arrested Verdree and also took custody of a loaded, silver .38 caliber revolver they found in a duffel bag on a couch. Although Roberts told the officers that the revolver belonged to him, the officers did not arrest Roberts because, at the time, he was not a suspect in the robberies.

An investigator conducted a custodial interview of Verdree early the next morning. According to the investigator, he advised Verdree that he was going to be charged with the March 1998 armed robbery, and, at that point, Verdree "stated something to the effect of, now you got me, I guess we'll just have to have a trial." Verdree then told the investigator that he wanted to get some sleep and did not want to answer any more questions, so the interview ended.

The investigator also testified that Wayne Roberts called him the day after Verdree was arrested and said that he wanted the sheriff's department to return to him the revolver that was seized when Verdree was arrested. The investigator asked Roberts to come to his office to discuss the gun, and Roberts did so. As the men were

talking, the investigator realized that Roberts owned a blue Volkswagen Quantum that was similar to a car shown in the surveillance videotape of the March 1998 armed robbery. At that point, the investigator told Roberts that witnesses had seen Verdree getting out of Roberts' car on the morning of the robbery, and he informed Roberts that he was a suspect in the robbery. The investigator then read Roberts his *Miranda* rights and conducted an audiotaped interview; the State played a redacted version of the audiotape for the jury. According to the transcript of the tape, which the State distributed to the jury, Roberts told the investigator that he and Verdree were riding around in his car on the morning of the March 1998 robbery and that Verdree had said he wanted to go to Taco Bell to get something to eat. The restaurant was not open yet, so Roberts drove through the parking lot, got some gas, drove back through the lot, and parked nearby to wait for the Taco Bell to open at 10:00 a.m. Verdree then went into the restaurant while Roberts waited in the car; Verdree was inside the restaurant for about ten minutes before walking back to Roberts' car. According to Roberts, Verdree never told him that he was planning to rob the Taco Bell or said anything about the robbery afterward. Roberts also stated that he had never seen Verdree with a gun. When the investigator asked Roberts how Verdree got the gun that was used in the robbery, Roberts said that Verdree must have gotten it out of a bag in the trunk without his (Roberts') knowledge.[2]

1. Verdree contends that the trial court violated his constitutional right to confrontation by allowing the State to present the testimony of the investigator who conducted the custodial interview of Roberts. The record shows that, prior to Verdree's trial, his counsel filed a motion in limine asking the court to exclude any testimony about what Roberts told the investigator during the custodial interview. During two pre-trial hearings and one conducted during the trial, outside the presence of the jury, the State argued that the investigator's testimony about Roberts was admissible under the co-conspirator exception to the hearsay rule, because Roberts made the statements about Verdree while there was a conspiracy in progress between the two men and his initial statements denying any participation or knowledge about the robbery were made in furtherance of the conspiracy. The court ruled that Roberts' statements, up to the point where he admitted his involvement in the robbery, were statements of a co-conspirator in a concealment phase of an alleged crime and, therefore, were admis-

---

[2] The record also shows that Roberts later confessed to the March 1998 robbery. That portion of the interview was not played for the jury in Verdree's trial.

sible outside the hearsay rule. The court also ruled that the statements were admissible because they did not amount to a confession which directly inculpated Verdree. For the following reasons, however, we conclude that the court erred in admitting the statements.

(a) Under OCGA § 24-3-5, after the State proves that a conspiracy to commit a crime existed, the declarations by any one of the conspirators during the pendency of the criminal project are admissible against all of them. But, under OCGA § 24-3-52, "[t]he confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself." "A conspirator's post-arrest statement to police incriminating a co-conspirator terminates the conspiracy, rendering the statement admissible only against the declarant." (Citations and punctuation omitted.) *O'Neill v. State*, 285 Ga. 125, 126 (674 SE2d 302) (2009). See *Meadows v. State*, 264 Ga. App. 160, 166 (5) (590 SE2d 173) (2003) (a statement made to police by a conspirator which incriminates the other conspirator as a party to the crime constitutes termination of the conspiracy, regardless of whether the statement is inculpatory or exculpatory as to the declarant). Thus, Roberts' statements to the investigator, which clearly incriminated Verdree by placing him inside the Taco Bell at the exact time of the March 1998 armed robbery and kidnappings, were not made during the pendency of the criminal project and, therefore, were not admissible against Verdree under OCGA § 24-3-5. OCGA § 24-3-52; *O'Neill v. State*, 285 Ga. at 126.

(b) Moreover, the admission of Roberts' custodial statements to the investigator violated Verdree's Sixth Amendment right of confrontation under *Crawford v. Washington*, 541 U. S. 36, 40 (124 SC 1354, 158 LE2d 177) (2004).

> The confrontation clause imposes an absolute bar to admitting out-of-court statements in evidence when they are testimonial in nature, and when the defendant does not have an opportunity to cross-examine the declarant. Although the trial in this case took place prior to the date *Crawford* was decided, this Court has held that, to the extent that *Crawford* enunciated a new rule for the conduct of criminal prosecutions, it applies retroactively to all cases pending on direct review or not yet final. [Roberts'] in-custody statement to police was testimonial inasmuch as it was made during the course of an investigation[.]

(Citations and punctuation omitted.) *Soto v. State*, 285 Ga. 367, 369 (2) (a) (677 SE2d 95) (2009). See *Watson v. State*, 278 Ga. 763, 768 (2) (604 SE2d 804) (2004) (statements made to police officers during an

investigation qualify as "testimonial" for the purpose of determining whether *Crawford* applies). In this case, Roberts' statements to the investigator were testimonial in nature, and Verdree did not have an opportunity to cross-examine Roberts in an attempt to discredit the statements because Roberts did not testify at Verdree's trial. Thus, the statements were inadmissible under *Crawford*, and the trial court erred in admitting the statements over Verdree's objections. *Soto v. State*, 285 Ga. at 369 (2) (a).

(c) Further, the record supports a finding that the erroneous admission of Roberts' statements constituted harmful error. Although the State presented eyewitness testimony and other evidence which supported a finding that Verdree committed the armed robberies and other crimes, Verdree had the opportunity to cross-examine those witnesses about their testimony. In fact, Verdree's counsel extensively cross-examined the eyewitnesses about their ability to see the robber's face during the robberies, their descriptions of the robber, and their subsequent identifications of Verdree. Counsel even showed that some of the witnesses had been unable to conclusively identify the robber or had identified someone other than Verdree during photographic lineups shortly after the robberies. Counsel also cross-examined the witnesses about their knowledge about guns in general, their description of the gun used in the robberies, and the differences between that gun and the revolver seized from Roberts. In contrast, since Verdree's counsel did not have the opportunity to cross-examine Roberts about his statements to the investigator, Roberts' statements were the *only* undisputed evidence which conclusively placed Verdree inside the Taco Bell at the exact time it was robbed in March 1998. Thus, the investigator's testimony was not cumulative of other evidence presented.[3] In addition, given the additional evidence that Roberts owned a silver revolver and the similarity of the robber's appearance and actions during each of the robberies and kidnappings, we cannot say that the improper admission of uncontradicted evidence showing that Verdree was inside the Taco Bell at the time of the March 1998 robbery was harmless beyond a reasonable doubt.[4] Consequently, we must reverse the trial court's denial of Verdree's motion for new trial.

2. Verdree also contends that the delay in the appeals process

---

[3] Cf. *Watson v. State*, 278 Ga. at 768 (2) (b) (although the trial court erred in admitting hearsay statements made to a police officer during an investigation because such statements were testimonial in nature, the error was harmless because the officer's testimony was cumulative of other, properly admitted evidence).

[4] Cf. *Soto v. State*, 285 Ga. at 371-372 (2) (c) (in light of the overwhelming evidence of the defendant's participation in the murder, including the defendant's own admissions and evidence which corroborated those admissions, any error in admitting his co-defendant's hearsay statements was harmless beyond a reasonable doubt).

violated his constitutional due process rights. It is undisputed that eight years passed from the date Verdree initially filed a motion for new trial and the trial court's denial of that motion.

Pretermitting whether there is any merit to Verdree's contentions on appeal, however, the record shows that Verdree failed to raise this issue in his July 2008 amended motion for new trial and did not argue it during the hearing on the motion. Further, the trial court did not issue a ruling on this issue. Therefore, there is nothing for this Court to review, and this issue has been waived. *Butler v. State*, 277 Ga. App. 57, 64 (5) (625 SE2d 458) (2005).

3. Verdree contends that the trial court erred in allowing the State to introduce his mother's out-of-court identification of him, which occurred when a police officer showed her photographs from the third robbery. According to Verdree, his mother's statements were inadmissible hearsay and their admission violated *Crawford v. Washington*, 541 U. S. at 40.

(a) The record shows that Verdree filed a motion in limine to exclude the mother's statements to the officer on the basis of hearsay. Following a hearing, the court overruled Verdree's objection. Then, at trial, the court gave Verdree's counsel another opportunity to clarify and preserve his objection to the statements for the record. Counsel stated that he did not object to admission of the *fact* that Verdree's mother had identified Verdree from the photographs, but only objected to the admission of the mother's "specific words" to the officer, because they were hearsay.[5]

When the officer testified about the mother's identification of Verdree, he did not quote the mother or otherwise suggest that he was recounting her specific words. During cross-examination, however, Verdree's counsel asked the officer, "What was [Ms. Verdree's] precise response [to questioning about the pictures]?" The officer responded, "Her precise response was that it was Jamie, her son." Verdree's counsel persisted, asking, "That was [sic] her exact words?" The officer then testified, "No. Her exact words was [sic] it's Jamie, you can tell because of the tooth." Verdree's mother later testified for the defense at trial, and stated that, when the officer showed her the photographs, she told him that the photographs "looked more like my son Jamie" than his brother, Jermaine.

Thus, pretermitting whether the testimony at issue was hearsay, given Ms. Verdree's testimony, the record shows that Verdree's counsel only objected to the admission of the mother's "specific words" to the officer, and, even though the court overruled the

---

[5] See *Peebles v. State*, 236 Ga. 93, 95 (1) (222 SE2d 376) (1976) (testimony as to the fact that the victim identified the accused as his attacker was not inadmissible hearsay).

objection, the State did not present such evidence. Instead, it was Verdree's counsel who elicited the testimony during cross-examination. Under such circumstances, Verdree is precluded from complaining about the admission of the evidence on appeal. *Menard v. State*, 281 Ga. App. 698, 699-700 (2) (637 SE2d 105) (2006); see also *Albarran v. State*, 249 Ga. App. 331, 333 (3) (548 SE2d 440) (2001) (hearsay evidence is harmless when there is admissible evidence of the same fact before the jury).

(b) Verdree's contention that the admission of the officer's testimony violated *Crawford* is waived, as he failed to raise this issue in his July 2008 amended motion for new trial and did not argue it during the hearing on the motion.[6] Further, the trial court did not issue a ruling on this issue. *Sheppard v. State*, 294 Ga. App. 270, 271-272 (2) (669 SE2d 152) (2008).

4. Verdree contends that the trial court erred in allowing the State to tell prospective jurors during voir dire that Roberts had already been tried and convicted of driving "the armed robber" to the Taco Bell on the morning of the third robbery. He also complains that the court erred in denying his motion for mistrial that followed the State's reference to Roberts; in denying his motion in limine to restrain the State from making any further reference to Roberts' conviction; in allowing the State to tell jurors the same thing during opening statements;[7] and in allowing the State to elicit testimony from an officer that Roberts had been convicted.

Generally, the guilty plea or conviction of a joint offender is not admissible in evidence at the trial of another joint offender. *Pinckney v. State*, 236 Ga. App. 74, 74-75 (1) (510 SE2d 923) (1999).

> This rule does not apply where the joint offender is present at trial and testifies as a witness subject to cross-examination[, however, nor] does it apply where the joint offender's guilty plea [or conviction] is admitted with instructions that it not be used as evidence of the defendant's guilt.

(Citations omitted.) Id. at 75 (1).

In this case, the trial transcript shows that, following the prosecutor's statements, the court instructed the jury that they were not to consider the attorneys' statements, either during voir dire and during their opening and closing statements, as evidence in this case. Later, after the State elicited the officer's testimony regarding

---

[6] Verdree's failure to object to the testimony at trial on the basis of *Crawford* is not an issue since *Crawford* had not yet been decided at that time.

[7] The opening statements were not transcribed.

Roberts' conviction, the court also instructed the jury that

> any action taken against a co-defendant . . . in this case, is not relevant to [your] decision in this case. [You] should not give it any weight. The fact [that] somebody has been tried . . . [is] just for informational purposes as to the whole case, [but] you should not give it any consideration as to the guilt or innocence of this Defendant in this case[.]

Typically, when the court gives such instructions, the admission of the co-defendant's conviction is rendered harmless. *Pinckney v. State*, 236 Ga. App. at 75 (1). Given our decision in Division 1, supra, however, that the court erred in admitting Roberts' custodial admissions that he and Verdree were at the Taco Bell at the time of the third robbery and that Verdree went inside the restaurant alone, the statements by the prosecutor and the evidence that showed Roberts had been tried and convicted on charges stemming from the third robbery were extremely prejudicial and effectively denied Verdree a fair trial. Id. Unfortunately, even with the court's instructions to the jury, the only reasonable inference to be drawn from the statements and evidence is that, because Roberts had been found guilty, Verdree must also be guilty. Id. Thus, under these circumstances, we conclude that the court erred in allowing the statements and admitting the evidence and that such error was harmful as a matter of law.[8] Id.

5. Verdree contends that the evidence was insufficient to support his convictions for aggravated assault,[9] kidnapping,[10] armed robbery,[11] possession of a firearm during the commission of a crime,[12] and use of a firearm by a convicted felon.[13] When a criminal

---

[8] Although the State will be precluded from eliciting evidence regarding Roberts' custodial statements during Verdree's retrial unless Roberts testifies, we cannot predict at this juncture whether similar statements or evidence about Roberts' conviction, even if accompanied by the court's limiting instructions, will be permissible or will constitute harmful error.

[9] See OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon.").

[10] See former OCGA § 16-5-40 (a) ("A person commits the offense of kidnapping when he [or she] abducts or steals away any person without lawful authority or warrant and holds such person against [the person's] will."). See also footnote 14, infra.

[11] See OCGA § 16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon.").

[12] See OCGA § 16-11-106 (b) (1) ("Any person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of . . . [a]ny crime against or involving the person of another . . . and which crime is a felony, commits a felony.").

[13] See OCGA § 16-11-133 (b) (1) ("Any person who has previously been convicted of . . . any felony involving the use or possession of a firearm and who shall have on or within arm's reach of his or her person a firearm during the commission of . . . [a]ny crime against or involving the person of another . . . and which crime is a felony, commits a felony.").

defendant challenges the sufficiency of the evidence supporting his or her convictions, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. at 319. It is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

(a) Verdree argues that the evidence was insufficient to support his kidnapping convictions because the movement of the victims during the kidnappings (otherwise known as "asportation") was not sufficiently separate from all of the other offenses for which he was charged, nor did the asportation substantially isolate them from protection or rescue. In *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008), the Supreme Court of Georgia adopted a standard for determining the sufficiency of evidence of asportation in kidnapping cases.[14] In making this determination, the court should assess four factors:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

(Footnote omitted.) Id.

In this case, the evidence showed that Verdree forced each of the kidnapping victims into the restaurants' walk-in coolers at gunpoint, told them not to leave, shut the door, and made them stay in the cooler for several minutes. These actions were not a necessary or inherent part of the armed robberies, and they created additional dangers to the victims by subjecting them to cold temperatures, isolating them and reducing their chance of rescue, and enhancing

---

[14] Notably, in 2009, the Georgia General Assembly amended OCGA § 16-5-40 to provide that slight movement shall be sufficient evidence of asportation to prove kidnapping, as long as such movement is not merely incidental to another offense. Ga. L. 2009, p. 331, § 1. The amendment also delineates the circumstances under which the movement shall not be considered merely incidental to another offense. Id. The amendment, however, only applies to crimes committed on or after the revised statute's effective date, July 1, 2009. OCGA § 1-3-4; *Wilkinson v. State*, 298 Ga. App. 190, 195 (1) (d), n. 2 (679 SE2d 766) (2009).

Verdree's control over them. *Garza v. State*, 284 Ga. at 702 (1). Under these circumstances, the evidence of asportation and the remaining elements of kidnapping was sufficient to support Verdree's convictions. *Henderson v. State*, 285 Ga. 240, 244-245 (5) (675 SE2d 28) (2009); *Garza v. State*, 284 Ga. at 702 (1).

(b) In challenging the evidence supporting his convictions for use of a firearm by a convicted felon,[15] Verdree complains that the only evidence presented by the State to prove he was a convicted felon was a 1992 conviction in South Carolina for the possession of a firearm under the age of 21. The record shows that the South Carolina court gave Verdree a two-year sentence, with credit for time served, one year of probation to follow, and the balance suspended. Under OCGA § 16-11-133 (a) (1), the term "felony" for the purpose of that Code section means "any offense punishable by imprisonment for a term of one year or more[.]" Thus, the evidence was sufficient for the jury to find Verdree guilty beyond a reasonable doubt of the use of a firearm by a convicted felon.

(c) Viewing the evidence in favor of the jury's verdict, we conclude that, even if the trial court had excluded the officers' testimony regarding the statements of Roberts or Ms. Verdree, or evidence of Roberts' conviction, the evidence was sufficient for the jury to find Verdree guilty beyond a reasonable doubt of the remaining offenses. *Jackson v. Virginia*, 443 U. S. at 319 (III) (B).

(d) As a result, the State may retry Verdree on all of the offenses as indicted without violating his right against double jeopardy. See *Jenkins v. State*, 259 Ga. App. 47, 49 (2) (576 SE2d 300) (2002) ("The general rule is that the retrial of the defendant is not barred where reversal of the conviction results from trial error rather than evidentiary insufficiency.") (punctuation omitted).

6. Verdree contends that the charges for aggravated assault with a deadly weapon were lesser included offenses of either the kidnapping or armed robbery charges and, therefore, his aggravated assault convictions should have merged with the other convictions.[16]

> Georgia's statutory bar to successive prosecutions and multiple convictions for the same conduct, OCGA § 16-1-7, is more expansive than the constitutional proscription of double jeopardy. OCGA § 16-1-7 (a) sets forth the substan-

---

[15] The State presented evidence in support of these charges during the second portion of a bifurcated trial, after the jury had convicted Verdree on the other counts of the indictment.

[16] Although Verdree did not raise the merger issue in the court below, the issue is not waived by such failure. See *Curtis v. State*, 275 Ga. 576, 578 (1) (571 SE2d 376) (2002) (overruling a line of cases in which the Court of Appeals held that a defendant could waive the issue of merger of included offenses by failing to raise it in the trial court).

tive bar of double jeopardy by providing that an accused may be *prosecuted* for each crime that arises from the accused's conduct, but an accused may not be *convicted* of more than one crime, if one crime is included in the other. Thus, Georgia law bars conviction and punishment of all crimes which arise from the same criminal conduct and are as a matter of law or a matter of fact included in the major crime for which the defendant has been convicted. In determining whether there are two separate offenses or one crime is included in the other, Georgia's courts apply the "required evidence" test. Where the same act or transaction constitutes a violation of two distinct statutory provisions, the required evidence test is whether each provision requires proof of a fact which the other does not. As the Supreme Court of Georgia stated previously, a single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

(Citations and punctuation omitted; emphasis in original.) *Rouse v. State*, 295 Ga. App. 61, 61-62 (1) (670 SE2d 869) (2008). See also *Drinkard v. Walker*, 281 Ga. 211, 214-217 (636 SE2d 530) (2006) (adopting the "required evidence" test for determining when one crime is included in another under OCGA § 16-1-6 (1), and overruling cases which are inconsistent with that test).

(a) As shown in footnotes 9 and 10, supra, aggravated assault with a deadly weapon has at least one distinct required element which kidnapping does not, and vice versa. Therefore, because each offense requires proof of at least one fact which the other does not, neither crime is included in the other, and the crimes do not merge as a matter of law. *Drinkard v. Walker*, 281 Ga. at 215; see also *Walker v. State*, 275 Ga. App. 862, 862-863 (622 SE2d 64) (2005) (although the crimes of kidnapping with bodily injury and aggravated assault merge as a matter of law due to their common elements, the same is not true for the crimes of kidnapping and aggravated assault).

As for whether the kidnapping and aggravated assault charges in this case should merge as a matter of fact, it is unnecessary for this Court to reach such issue at this point because we have reversed Verdree's convictions and remanded the case to the trial court for retrial. Consequently, the determination of whether, as a matter of fact, the kidnappings were complete before Verdree committed the

aggravated assaults[17] or he committed the aggravated assaults while in the process of kidnapping the employees, as well as any other factual issues related to the question of merger, will depend upon the evidence presented by the State during the retrial.

(b) To the extent that Verdree argues that any of the aggravated assault charges should have merged with the armed robberies, the argument lacks merit. The State did not charge Verdree with committing aggravated assault against any of the armed robbery victims. Because the armed robberies and aggravated assaults were committed against different victims, the crimes do not merge as a matter of law or fact. See *Harris v. State*, 272 Ga. App. 366, 373 (6) (612 SE2d 557) (2005) (a conviction for vehicular homicide, based upon the death of one person, and five convictions for serious injury by vehicle, based upon the injury of five other victims, did not merge as a matter of fact or law, even though the convictions stemmed from the same instance of driving under the influence of alcohol).

7. Verdree claims that his trial counsel provided ineffective assistance. He also argues that his appellate counsel provided ineffective assistance when he waived that claim by failing to raise it in the motion for new trial.[18] In light of our holding in Division 1, supra, Verdree's ineffective assistance claims are moot. *Gibbs v. State*, 287 Ga. App. 694, 700 (2) (652 SE2d 591) (2007).

8. In addition, in view of our holding in Division 1, supra, Verdree's remaining enumerations of error are either moot or are unlikely to recur upon retrial.

*Judgment reversed and case remanded. Johnson, P. J., and Mikell, J., concur.*

.DECIDED AUGUST 10, 2009.

*Carl G. Schluter*, for appellant.
*Rebecca A. Wright, District Attorney, Madonna M. Little, Assistant District Attorney*, for appellee.

---

[17] See *Henderson v. State*, 285 Ga. at 244 (4) (two offenses do not merge as a matter of fact when one crime is completed prior to the commission of the other crime).

[18] "The rule that an ineffectiveness claim must be raised at the earliest practicable moment requires that that claim be raised before appeal if the opportunity to do so is available. If the claim is not raised at the earliest practicable moment, it is waived." (Punctuation and footnote omitted.) *Alford v. State*, 293 Ga. App. 512, 515-516 (4) (667 SE2d 680) (2008).