A10A2292. MUCKLE v. THE STATE.
(705 SE2d 721)

BARNES, Presiding Judge.

Virginia Muckle was convicted of and sentenced for the crimes of voluntary manslaughter and aggravated assault in connection with the fatal stabbing of her estranged boyfriend. Muckle appeals from the denial of her motion for a new trial, contending that the trial court erred in denying her motion for a directed verdict of acquittal. Concluding that the jury was authorized to reject Muckle's affirmative defenses of self-defense and defense of habitation, we affirm the judgment of conviction for voluntary manslaughter. However, because the aggravated assault conviction should have been merged into the voluntary manslaughter conviction, we vacate the conviction and sentence for aggravated assault and remand to the trial court for resentencing.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) *Jackson v. State*, 236 Ga. App. 260, 260-261 (511 SE2d 615) (1999). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Viewed in this manner, the evidence showed that Muckle and the victim were involved in a volatile "on and off" relationship that spanned several years. Approximately two weeks prior to the stabbing, the victim moved out of Muckle's apartment, but he continued to come over and visit her after that time. On the night of June 22, 2002, Muckle returned home to her apartment after work, where she was joined by the victim. They began to argue, and the confrontation escalated from angry words to objects being thrown. Muckle stabbed

the victim in the chest with a knife, and he died several months later as a result of complications arising from the chest wound. There were no visible signs of any injuries to Muckle.

Muckle was arrested and indicted on charges of voluntary manslaughter and aggravated assault. See OCGA §§ 16-5-2 (a);[1] 16-5-21 (a) (2).[2] Count 1 of the indictment averred that Muckle committed voluntary manslaughter in that during the commission of an "aggravated assault, [she] cause[d] the death of the [victim], by stabbing him with a knife while acting solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." Count 2 of the indictment averred that Muckle committed aggravated assault in that she did "unlawfully commit an assault upon the [victim] by stabbing him with a knife, an object which when used offensively against a person is likely to result in serious bodily injury."

A jury trial ensued in which the State and Muckle presented widely divergent accounts of the stabbing. The State relied upon the eyewitness testimony of a neighbor who lived in the apartment that adjoined Muckle's. The neighbor testified that when she heard fighting and "things hitting the walls" next door, she stepped outside onto her doorstep to find out what was going on. From that vantage point, she could see and hear inside Muckle's apartment. According to the neighbor, she observed Muckle and the victim arguing in the kitchen, and then Muckle "asked [the victim] to leave her house and as he was walking out the door, he turned around and she stabbed him." The neighbor testified that the victim had not made any threatening gestures or statements to Muckle prior to being stabbed. The neighbor further testified that after the stabbing, the victim staggered away from Muckle's apartment and lay down on the sidewalk. The neighbor by her own account then attempted to assist the victim, but Muckle came over to the victim, spat on him, repeatedly kicked him in the rib cage, and said, "Let the motherf***er die!" The neighbor's daughter similarly witnessed Muckle's conduct while the victim was lying on the sidewalk and testified consistently with her mother's account.

---

[1] A defendant is guilty of voluntary manslaughter if "he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a).

[2] A defendant is guilty of an assault if she "[a]ttempts to commit a violent injury to the person of another" or "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a). If the assault is committed "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury," the defendant is guilty of aggravated assault. OCGA § 16-5-21 (a) (2).

In contrast, Muckle admitted to fatally stabbing the victim but claimed that the act was justified as self-defense and as defense of her habitation. She presented witnesses who testified to prior incidents in which the victim was aggressive toward her or threatened her. Muckle also took the stand and testified concerning prior incidents in which the victim allegedly physically attacked her. She further testified that on the night of the stabbing, the victim had forced his way into her apartment without her permission and attacked her after accusing her of having another man inside. According to Muckle, the victim chased her into her kitchen, cornered her next to the sink, and started to choke her, at which point she grabbed a steak knife from the sink and stabbed him one time. Muckle denied attacking the victim on the sidewalk following the stabbing.

Muckle, however, admitted that she initially lied to the police about what had occurred, telling the responding officers that three "dope boys" had kicked in the front door and chased the victim around the apartment before stabbing him, despite the fact that there was no evidence of a forced entry. Muckle further admitted that she hid the knife after the stabbing so that the police would not locate it, and that in a prior incident she had struck the victim in the head with a telephone.

To rebut Muckle's account of the incident, the State introduced a prior inconsistent statement in which Muckle confided to a relative that on the night in question, the victim had knocked at her front door and had come inside her apartment only after she gave him permission to do so. The State also presented testimony from a detective that no blood or any other sign of an altercation had been found in the kitchen area where Muckle claimed that the stabbing had occurred. But, the detective related, blood had been found on and around the front door, consistent with the neighbor's version of events.

Following the close of evidence, the trial court charged the jury on, among other things, the affirmative defenses of self-defense and defense of habitation. After hearing the conflicting evidence, the jury returned a verdict of guilty on both counts of the indictment. The trial court entered judgments of conviction on both counts and sentenced Muckle to concurrent 15-year terms of imprisonment. Muckle moved for a new trial, which the trial court denied. This appeal followed.

1. *Voluntary Manslaughter.* Muckle argues that the trial court erred in denying her motion for a directed verdict of acquittal on the voluntary manslaughter count because the State failed to disprove beyond a reasonable doubt her affirmative defenses of (a) self-

defense and (b) defense of habitation. See generally *Burchett v. State*, 283 Ga. App. 271, 273 (2) (641 SE2d 262) (2007) (once evidence of an affirmative defense is presented, "it then [is] incumbent upon the State to disprove the defense beyond a reasonable doubt"). We disagree and instead conclude that the evidence was sufficient to authorize a rational trier of fact to find Muckle guilty beyond a reasonable doubt of voluntary manslaughter. *Jackson*, 443 U. S. 307. See OCGA § 16-5-2 (a).

(a) *Self-Defense.* "A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself . . . against such other's imminent use of unlawful force[.]" OCGA § 16-3-21 (a). But "a person is not justified in using force in self-defense if he is the initial aggressor or engages in mutual combat, unless he withdraws from the encounter and notifies the other participant that he is doing so." *McKee v. State*, 280 Ga. 755, 756 (2) (632 SE2d 636) (2006). Nor does the continued use of force after the "imminent danger justifying self-defense ha[s] passed" qualify as self-defense. (Citation and punctuation omitted.) *McDonald v. State*, 170 Ga. App. 884, 885 (2) (318 SE2d 749) (1984). See *Young v. State*, 188 Ga. App. 601 (373 SE2d 837) (1988). Likewise, conduct cannot be justified as self-defense if the amount of force used by the person to defend himself or herself is excessive. *Richards v. State*, 288 Ga. App. 814 (655 SE2d 690) (2007).

Viewed in the light most favorable to the verdict, the evidence was sufficient to enable a rational trier of fact to find that Muckle's stabbing of the victim was not justified as an act of self-defense. See *Smith v. State*, 249 Ga. App. 736, 736-738 (550 SE2d 106) (2001); *McGuire v. State*, 243 Ga. App. 899, 899-900 (1) (534 SE2d 549) (2000). The neighbor's eyewitness testimony, standing alone, was sufficient to support a finding that Muckle was the aggressor, continued to use force after any imminent danger posed by the victim had passed, or used excessive force. See OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."). The jury also was entitled to rely upon the evidence (by Muckle's own admission) that she lied to the police about the stabbing and hid the knife. See *Fortune v. State*, 304 Ga. App. 294, 297 (1) (696 SE2d 120) (2010) (lying to police and attempting to discard evidence can serve as circumstantial evidence of guilt). The jury, moreover, could consider Muckle's admission that in a prior incident she struck the victim in the head with a telephone. See *Buice v. State*, 281 Ga. App. 595, 596 (1) (636 SE2d 676) (2006) (noting that evidence of prior difficulties "most certainly demonstrated the state of the relationship between appellant and the

YALE LAW LIBRARY

victim," and was "highly relevant" to show the appellant's "abusive bent of mind" toward the victim) (citation and punctuation omitted). And although Muckle offered testimony that conflicted with the State's version of events, it was the role of the jury, not this Court, to assess the credibility of the witnesses and decide whose testimony to accept or reject. See *McGuire*, 243 Ga. App. at 900 (1). Accordingly, Muckle was not entitled to a directed verdict of acquittal on the voluntary manslaughter count predicated on her claim of self-defense.

(b) *Defense of Habitation.* "A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation." OCGA § 16-3-23. For purposes of the present case, deadly force would be justified only if

> [t]he entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence[.]

OCGA § 16-3-23 (1).

Viewed in the light most favorable to the verdict, the evidence was sufficient to enable a rational trier of fact to find that Muckle's stabbing of the victim was not justified as defense of her habitation. See *Zachery v. State*, 199 Ga. App. 891 (406 SE2d 243) (1991). The jury was authorized to rely upon Muckle's prior inconsistent statement to her relative to conclude that the victim's entry into the apartment was not "violent and tumultuous." See *Buice*, 281 Ga. App. at 596 (1) (prior inconsistent statements of a testifying witness constitute substantive evidence upon which a jury can rely in convicting a defendant). Based upon the eyewitness testimony of the neighbor, the jury also was authorized to find that the victim "was unarmed and that deadly force was not necessary for [Muckle's] protection." *Zachery*, 199 Ga. App. at 893. Consequently, Muckle was not entitled to a directed verdict of acquittal on the voluntary manslaughter count predicated on her claim of defense of habitation.

2. *Aggravated Assault.* There was sufficient evidence to support Muckle's aggravated assault conviction for the same reasons discussed in Division 1. *Jackson*, 443 U. S. 307. See OCGA §§ 16-5-20 (a); 16-5-21 (a) (2). Nevertheless, the trial court erred in entering a judgment of conviction and sentence for aggravated assault because

that conviction should have been merged into the voluntary manslaughter conviction.[3]

"Georgia law bars conviction and punishment of all crimes which arise from the same criminal conduct and are as a matter of law or a matter of fact included in the major crime for which the defendant has been convicted." *Verdree v. State*, 299 Ga. App. 673, 683 (6) (683 SE2d 632) (2009). See OCGA § 16-1-7 (a); *Drinkard v. Walker*, 281 Ga. 211, 217 (636 SE2d 530) (2006). Here, a separate judgment of conviction and sentence for aggravated assault would be authorized only if the indictment averred, and the State proved, that Muckle "commit[ted] an aggravated assault independent of the act which caused the victim's death." *Coleman v. State*, 286 Ga. 291, 295 (3) (687 SE2d 427) (2009). See also *Mikell v. State*, 286 Ga. 722, 724 (3) (690 SE2d 858) (2010). But Muckle was charged in the indictment with voluntary manslaughter and aggravated assault for the stabbing of the victim, and the undisputed evidence at trial showed that the victim was stabbed one time in the chest, causing the victim's death. It follows that Muckle's conviction for aggravated assault merged as a matter of fact into her conviction for voluntary manslaughter. See, e.g., *Williams v. State*, 300 Ga. App. 305, 306 (2) (684 SE2d 430) (2009), rev'd on other grounds, 288 Ga. 7 (700 SE2d 564) (2010) (concluding that "the trial court properly held that the aggravated assault conviction merged with that for voluntary manslaughter"); *Hayles v. State*, 287 Ga. App. 601, 602 (651 SE2d 860) (2007) (noting that aggravated assault conviction merged into voluntary manslaughter conviction). Therefore, we vacate the conviction and sentence for aggravated assault and remand the case for resentencing with direction to merge the aggravated assault count into the voluntary manslaughter count. See *Mikell*, 286 Ga. at 725 (3); *Herrera v. State*, 306 Ga. App. 432, 434 (3) (702 SE2d 731) (2010).

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. Blackwell and Dillard, JJ., concur.*

DECIDED JANUARY 26, 2011.

*Mary Erickson*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.

---

[3] Although Muckle did not raise the merger issue in the court below or on appeal, the issue is not waived. See *Mikell v. State*, 286 Ga. 722, 725 (3) (690 SE2d 858) (2010).