**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 1, 2019**

# In the Court of Appeals of Georgia

A19A1525. FRAZIER v. THE STATE.

REESE, Judge.

A Chattooga County jury found James Frazier ("the Appellant") guilty of multiple offenses, including four counts of burglary,[1] arising from actions that occurred from August 9, 2002, through August 11, 2002. The trial court sentenced the Appellant to serve 40 years in confinement, consecutive to sentences imposed by the Superior Court of Murray County and the Superior Court of Whitfield County, without the possibility of parole. The Appellant appeals from the denial of his motion for new trial, arguing that there was insufficient evidence to convict him of burglary as set forth in Count 4 of the indictment, and that the trial court erred in permitting

---

[1] See former OCGA § 16-7-1 (a).

correctional officers to provide courtroom security. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record shows the following. The victim ("R. J.") kept a 22-foot, "pull behind[,]" one-room camper on Dry Creek Road in a deer camp in Chattooga County in which he stayed during deer season. R. J. averred that he had parked the camper at the deer camp for "[a]bout four years[,]" and he camped there about six or seven times a year for "two or three days at a time[,]" although the camper did not have a bathroom, electricity, or refrigeration. He kept mattresses, a propane lantern, a tent, touch-operated lights, medical supplies, and a "12[-]volt light" in the camper.

On August 11, 2002, an investigator notified R. J. that his camper had been broken into around August 9, 2002. R. J. went to the deer camp to inspect the camper the next day. When he arrived on the morning of August 12, R. J. saw that the "[pad]lock had been shot off the door, holes had been shot through the windows [in] the back, the inside had been ransacked and stuff was missing." He testified that he kept valuable hunting supplies in his camper and that his sleeping bag, propane

---

[2] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

lantern, tent, and 12-volt light were missing from the camper. He further testified that he did not know the Appellant or the Appellant's co-defendant Shellan Lawson, and had not given either of them permission to enter his camper.

Shellan Lawson testified that she met the Appellant through a friend and decided to buy the Appellant's car for $500. The Appellant asked her to go camping with him, and she agreed because she wanted to swim and planned to stay with a friend overnight, after dropping the Appellant off at the camp. Sometime during the weekend of August 9 through August 11, 2002, Lawson and the Appellant traveled to the deer camp in Chattooga County.

Lawson testified that the Appellant brought some camping supplies and a gun, and she initially thought that the Appellant had permission to stay in the campers on the campground. She testified that the Appellant told her at some point that he had broken into the campers. Lawson admitted that she and the Appellant stole "camping stuff, sleeping bags, [and] chairs" from the campers. Further, on or about August 11, 2002, men from a neighboring campsite asked Lawson and the Appellant whether "[they] had seen anybody that had stolen stuff[ ]" from the campers. Lawson testified that the Appellant and the men "[got] into a confrontation[,]" and she ran into the woods and stayed there overnight. The next day, she left the woods and was arrested.

3

Lawson testified that she pled guilty to charges, including burglary and theft, and was sentenced to serve twenty years, with six years in confinement, and had promised to testify truthfully in the Appellant's case.

The jury found the Appellant guilty of burglary as to R. J.'s camper.[3] The trial court granted the Appellant's motion for an out-of-time appeal, and the Appellant filed a motion for new trial. After an 11-year delay,[4] the trial court conducted a hearing, after which it denied the Appellant's motion. This appeal followed.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[5] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as

---

[3] The jury also found the Appellant guilty of aggravated assault, six counts of burglary, and three counts of theft by taking.

[4] See *Morgan v. State*, 290 Ga. 788, 789, n. 2 (725 SE2d 255) (2012) ("This sort of extraordinary post-conviction, pre-appeal delay puts at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial. It is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay. That duty unfortunately was not fulfilled in this case.") (citation and punctuation omitted).

[5] 443 U. S. at 319 (III) (B).

there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[6]

"The standard of *Jackson v. Virginia*[7] is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged."[8] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant argues that the evidence was insufficient to support his conviction for the burglary of R. J.'s camper. Specifically, the Appellant contends that the State did not show that the camper was "designed for use as a dwelling[,]" as charged in Count 4 of the indictment. We conclude that there was sufficient evidence for the jury to conclude, beyond a reasonable doubt, that the use of the camper was established as a dwelling, as indicted.

Former OCGA § 16-7-1 (a) provided that a person committed burglary when,

---

[6] *Walker v. State*, 329 Ga. App. 369, 370 (765 SE2d 599) (2014) (punctuation and footnote omitted).

[7] 443 U. S. at 319 (III) (B).

[8] *Bautista v. State*, 305 Ga. App. 210, 211 (1) (699 SE2d 392) (2010).

5

without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof.

The State charged the Appellant in Count 4 of the indictment with burglary, for alleging that he "unlawfully, without authority and with the intent to commit a theft therein, enter[ed] the camper trailer designed for use as a dwelling of [R. J.]"

It is axiomatic that Georgia's former "burglary statute [did] not limit its application to buildings of any particular type or in any particular condition."[9] Further, contrary to the Appellant's argument, the present action is distinguishable from our opinion in *Jenkins v. State*.[10] In *Jenkins*, the State failed to present evidence constituting "even a bare description of the camper," so the evidence did not support a finding by the fact-finder that the camper had been designed for use as a dwelling, as charged in the indictment.[11] Here, the evidence shows that R. J. stayed in the camper for two or three days at a time during deer-hunting season, six or seven times

[9] *Franks v. State*, 240 Ga. App. 685, 687 (1) (524 SE2d 545) (1999) (citation and punctuation omitted).

[10] 259 Ga. App. 47 (576 SE2d 300) (2002).

[11] Id. at 51 (2) (b).

a year. Also, R. J. testified that he kept mattresses, lights, a cooler for refrigeration, and other camping and hunting supplies in the camper.

We conclude that there was sufficient evidence for the jury to find, beyond a reasonable doubt, that the use of the camper was established as a dwelling, as indicted, and we find that the jury's guilty verdict on the crime of burglary as charged in Count 4 of the indictment was supported by sufficient evidence.[12] Thus, it was not error for the trial court to deny the Appellant's motion for a new trial as to this conviction.

2. The Appellant argues that the trial court erred in permitting uniformed correctional officers to provide additional courtroom security during the Appellant's trial. For the reasons that follow, we disagree.

> It is preferred that the accused, while in the presence of the jury, should be free of indicia of guilt such as wearing shackles or prison garb, or being surrounded by uniformed security personnel, or anything else that might infringe upon the presumption that he is innocent. It is in the court's discretion whether to allow restraints on the defendant or the presence of officers in order to protect the safety of those in the

---

[12] See *Bray v. State*, 294 Ga. App. 562, 563 (1) (669 SE2d 509) (2008) ("A jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it.") (citation and punctuation omitted).

courtroom or the public. The appellant has the burden of showing the safety and security measures caused a violation of his constitutional rights.[13]

Thus, this Court's standard of review of the trial court's decision to have uniformed security personnel in the courtroom in the presence of the jury is abuse of discretion.[14]

The record shows that, at the beginning of the second day of trial and before the parties gave opening statements, the Appellant moved to exclude uniformed correctional officers from the courtroom. Specifically, the Appellant, through counsel, requested "an order directing the Hays Correctional Institution Officer and any other Sheriff's Office[rs] from actually sitting in the courtroom in a uniform, armed or not armed[, because] there is no way for any reasonable person to not know that [the Appellant] is in custody."

In response to the Appellant's argument, the State argued that "[the Appellant had recently] escaped, [and had] a prior history [of escaping]." The trial court denied the Appellant's motion, ruling that there was a "direct threat[ ]" that the Appellant would flee because "[the Appellant] escape[d] from the county jail last week[.]"

---

[13] *Brown v. State*, 240 Ga. App. 321, 323 (2) (523 SE2d 333) (1999).

[14] See id.

8

Despite the Appellant's argument to the contrary,[15] the trial court did not abuse its discretion in finding that there was a need for additional courtroom security in light of the Appellant's recent escape from custody.[16] Thus, we find that the trial court did not abuse its discretion in permitting uniformed correctional officers to provide additional courtroom security during the Appellant's trial.[17]

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[15] According to his trial counsel, the Appellant had worn shackles the previous day as he was moved in and out of the courtroom. Pretermitting whether this violated the Appellant's rights, we note that this issue was not raised in the Appellant's enumeration of errors and is, thus, not properly before this Court. See *Manley v. State*, 287 Ga. App. 358, 360 (4) (651 SE2d 453) (2007) ("[A] party cannot expand [his] enumeration[ ] of error[s] through argument or citation in [his] brief.") (punctuation and footnote omitted); see also Court of Appeals Rule 25 (a) (2).

[16] See *Thomas v. State*, 171 Ga. App. 306, 308 (4) (319 SE2d 511) (1984) (finding that the trial court did not abuse its discretion in authorizing that the defendant wear leg irons during trial when the record showed that the defendant escaped twice from the county jail and once from the courthouse while in leg irons); cf. *Hall v. State*, 215 Ga. App. 248, 249-250 (450 SE2d 293) (1994) (finding an abuse of discretion where the record lacked "detailed, demonstrable evidence" authorizing the additional security precautions, the crime at issue did not provide any reason for the use of physical restraints, and the sole witness regarding the use of uniformed correctional officers admitted that the defendant had made previous courtroom appearances without causing problems or acting disrespectfully).

[17] See *Thomas*, 171 Ga. App. at 308 (4).