## A09A1156. CRANE v. THE STATE.
### (685 SE2d 314)

MILLER, Chief Judge.

A Gwinnett County jury convicted Steven Bradley Crane of a single count of voluntary manslaughter (OCGA § 16-5-2). He filed a motion for new trial, which the trial court denied. Crane now appeals, arguing that (i) the evidence was insufficient to support his conviction; (ii) the trial court erred in charging the jury on voluntary manslaughter; and (iii) the trial court erred in excluding his res gestae statements to a Gwinnett County District Attorney Office intern. Concluding that there was sufficient evidence to support his conviction and otherwise discerning no error, we affirm.

Viewed in the light most favorable to the jury's verdict (*Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007)), the evidence shows that on the morning of November 5, 2003, after receiving a call from Patrick Decesaro, Crane and his friend, Jason Waddell, went to Decesaro's apartment with $2,000 with a view to purchasing some marijuana. Crane and Waddell were previously acquainted with Decesaro through mutual friends and had previously purchased marijuana from him. Shortly after they arrived, Crane and Waddell were assaulted and severely beaten by Decesaro, Braden Sams, and Nicholas Alsis. When they were able to break free and after Crane managed to recover their money, Crane and Waddell fled into some nearby woods. As they did so, Decesaro called Crane on his cell phone and threatened to kill him if he called the police.

Crane called Scott Friddell, a friend, to pick them up. When Friddell arrived, a very scared Crane and Waddell emerged from the woodline. Friddell testified that Crane was beaten up with cuts and scrapes, had a swollen face, and was bleeding profusely from a big gash on his head. Waddell also had injuries, including a swollen face. Friddell drove both men to Crane's home because Crane and Waddell were too frightened to retrieve Crane's truck from Decesaro's apartment complex.

On or about November 8, 2003, Crane borrowed a gun from Victor Bute, a friend, because he was "scared to death" and felt that he needed it for his protection. Four days later, on November 12, 2003, between 8:00 and 8:30 p.m., Bute inadvertently called Decesaro twice while trying to dial another friend's number and left a message for his friend to call him back. Shortly thereafter, Decesaro returned the call and told Bute that "it wasn't over between [me]

and [Crane]," and "[a]s long as [Crane's] breathing, I'm going to get him." Bute told Crane about his conversation with Decesaro, which left Crane distraught.

On the morning of November 13, 2003, after Crane had left home, Decesaro drove by Crane's house at a high rate of speed with his window rolled down, and yelled at Crane's landscaper that he was going to kill Crane. The landscaper conveyed the threat to Crane who had driven to a nearby Texaco station. Shortly thereafter, while driving, Crane observed Decesaro's vehicle as he made a turn onto Highway 316. Decesaro braked his vehicle, and Crane pulled up next to Decesaro, rolled his window down, and said, "What . . . are you doing out here by my house? . . . [S]tay away from me." Decesaro responded, again and again telling Crane to pull over and threatening to kill him, while accelerating his vehicle. Decesaro then picked up an object from the floorboard and threw it at Crane's truck. Crane accelerated his vehicle, and the two vehicles raced side by side, eventually reaching 70 miles per hour. Although Crane attempted to pull away from Decesaro, Decesaro repeatedly moved in front of Crane, eventually cutting Crane off as they approached a traffic light. There, in a rage, Decesaro exited his vehicle, yelling and screaming for Crane to get out of his truck. Decesaro first tried to open the door to Crane's truck, and then struck the window with his hand two to three times. Crane pulled out Bute's gun and pointed it at Decesaro, who responded that he was not afraid of a gun and challenged Crane to shoot him. Believing that another blow would shatter the window and fearful for his life or of being seriously injured if Decesaro struck the window again, Crane fired his gun, intending to hit Decesaro in the shoulder, but fatally wounding him, as Decesaro raised his fist once more to strike the window.

1. Crane argues that the evidence was insufficient to support a conviction for voluntary manslaughter because there was no evidence of provocation or passion and the evidence only supported a verdict of murder or self-defense. We disagree.

> A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

OCGA § 16-5-2 (a). "Evidence of voluntary manslaughter may be found in a situation which arouses the sudden passion in the person killing so that, rather than defending himself, he wilfully kills the attacker, albeit without malice aforethought, when it was not necessary for him to do so in order to protect himself." (Citations and punctuation omitted.) *Mullins v. State*, 270 Ga. App. 271, 276 (4) (605 SE2d 913) (2004). Compare OCGA § 16-3-21 (a) ("[A] person is justified in using force which is intended or likely to cause death or great bodily harm . . . if he . . . reasonably believes that such force is necessary to prevent death or great bodily injury to himself . . . or to prevent the commission of a forcible felony.").

We have held that "heated arguments, physical beatings and fear of some danger" present sufficient provocation for a voluntary manslaughter conviction. (Footnotes omitted.) *Williams v. State*, 245 Ga. App. 670, 671-672 (1) (538 SE2d 544) (2000); *Washington v. State*, 249 Ga. 728, 730 (3) (292 SE2d 836) (1982) (fear of some danger can be sufficient provocation to excite passion). Here, Decesaro's conduct in engaging Crane in a dangerous road race and threatening to kill him; throwing an object at Crane's truck, followed by his enraged demand that Crane get out of his truck; forcibly striking the window two or three times; and taunting Crane to shoot him supplied sufficient provocation to excite the passion necessary for voluntary manslaughter. *Thomas v. State*, 296 Ga. App. 231, 234 (1) (674 SE2d 96) (2009) (evidence of hostile encounters between defendant and the victim authorized the jury to conclude that defendant shot the victim as a result of sudden passion, rather than out of necessity to protect himself).

Further, Crane testified that the only thing he could think of at the time of the shooting was the physical beating which occurred eight days earlier and the fact that Decesaro had driven to his house that morning and was now at his vehicle. Crane's state of mind demonstrated that he had not "cooled off" from the beating and that the prior altercation engendered his fear and terror of further injury, provoking Crane into shooting Decesaro. The fact that Decesaro's death threats had prompted Crane to borrow a friend's gun for protection also showed that the initial assault stood unresolved and that no "cooling off" had taken place. *Williams*, supra, 245 Ga. App. at 672 (1) ("[e]arlier unresolved assaults without 'cooling off' may be sufficient provocation") (punctuation and footnote omitted).

Thus, the jury was authorized to reject Crane's theory of self-defense and conclude that Crane "was so influenced and excited that he reacted passionately rather than simply to defend himself" when he shot an unarmed Decesaro. (Punctuation and footnote omitted.) *Williams*, supra, 245 Ga. App. at 671 (1); OCGA §§ 16-5-2 (a); 16-3-21 (a); *Roper v. State*, 281 Ga. 878, 880 (1) (644 SE2d 120)

(2007) (witness credibility is for the jury to decide, as is the question of justification; therefore jury is free to reject claim that defendant acted in self-defense); *Thomas*, supra, 296 Ga. App. at 233 (1) (evidence showing that the victim was unarmed at the time of the incident authorized the jury to conclude beyond a reasonable doubt that defendant was not justified in using deadly force).

Since there was ample evidence of provocation at the time of the shooting and of an unresolved beating that had not "cooled off," the evidence was sufficient to support the verdict.

2. Crane also argues that the trial court erred in charging the jury with voluntary manslaughter because there was no evidence of provocation or passion and neither side requested such an instruction. Given our holding in Division 1 that the evidence was sufficient to support the elements of voluntary manslaughter, the trial court did not err in giving the charge. "Where there is any evidence, however slight, upon a particular point, it is not error for the court to charge the law in relation to that issue." (Punctuation and footnote omitted.) *Williams*, supra, 245 Ga. App. at 672 (2); *Coleman v. State*, 256 Ga. 306, 307 (1) (348 SE2d 632) (1986).

3. Crane argues that the trial court erred in excluding res gestae statements he made to a Gwinnett County District Attorney Office intern, Frederick Saldana. We are not persuaded.

"A trial judge's determination that evidence offered as part of the res gestae is sufficiently informative and reliable as to warrant being considered by the jury will not be disturbed on appeal unless that determination is clearly erroneous. [Cit.]" (Punctuation omitted.) *Patel v. State*, 278 Ga. 403, 404-405 (2) (603 SE2d 237) (2004).

Prior to trial, the State filed a motion in limine seeking to exclude statements made by Crane to law enforcement officers at the scene and argued that such statements were self-serving hearsay statements and not subject to the res gestae exception. The trial court granted the State's motion in limine to exclude all statements made by Crane to law enforcement officers, and put on the record that it had previously transmitted its ruling to the parties via e-mail and facsimile.[1] The trial court later clarified that the ruling included Crane's statement to Saldana, finding that Saldana was "under the gambit [sic] of law enforcement." Although Crane's trial counsel renewed its motion to admit Crane's statements as res gestae evidence and proffered the statement of Saldana, the trial court adhered to its prior ruling.

---

[1] The record does not reflect that the trial court held a hearing on the State's motion in limine before issuing its ruling. Further, the e-mail memorializing the trial court's ruling is not contained in the record.

Res gestae declarations are those "accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought." OCGA § 24-3-3. "Whether the res gestae exception should apply depends on factors including (i) the timing of the statement . . . (ii) whether the declarant was able to deliberate about the statement . . . and (iii) whether the declarant was influenced by others prior to making the statement. . . ." (Citations omitted.) *Key v. State*, 289 Ga. App. 317, 320-321 (1) (b) (657 SE2d 273) (2008). Each case turns on its own circumstances, so we examine the events rather than the precise time which has elapsed. *Jackson v. State*, 255 Ga. App. 279, 282 (2) (564 SE2d 865) (2002).

Here, after the shooting, Gwinnett County police officers immediately arrested Crane and placed him in the back of their patrol vehicle, where Saldana was already seated as the front passenger. Once there, Crane activated his Nextel two-way radio, and a female caller and his father responded sequentially to his radio summons. Although Crane made statements to, and in the presence of, Saldana shortly after the shooting, we cannot conclude that such statements were "free from all suspicion of device or afterthought" since Crane advised the female caller that he could not talk because he was in the back of a patrol car, and asked her not to call him back. OCGA § 24-3-3. Further, Crane's recounting of recent events to his father was a narrative and not part of the res gestae. Compare *Jackson*, supra, 255 Ga. App. at 282 (2) (mother's statement to police while kidnapping incident was in progress and children's statement to 911 operator sprang out of the incident itself, were exclamatory rather than narrative, and part of res gestae).

While there is no evidence that Crane was influenced by others prior to making the statements, he was clearly aware that Saldana was an intern from the University of Georgia who was interested in a career as a detective. This consciousness is reflected in Crane's final phone conversation in which he advised the caller that he was in a patrol vehicle but could not explain the reason or continue the conversation. Under the circumstances, we conclude that the trial court's decision to exclude Crane's statements to Saldana was not clearly erroneous. *Patel*, supra, 278 Ga. at 404-405 (2).

Assuming arguendo that the trial court erred in granting the State's motion in limine, it was not reversible error because Crane's statements to Saldana were cumulative of Crane's trial testimony describing his encounter with a hostile and enraged Decesaro, who repeatedly pounded his fist on Crane's window. Crane's statement to Saldana about his use of a 9 millimeter gun was consistent with undisputed evidence presented at trial. Thus, it was highly probable that the exclusion of Crane's statements to Saldana did not affect the verdict. See *Kennedy v. State*, 277 Ga. 588, 591-592 (4) (592 SE2d

830) (2004) (trial court's exclusion of a letter that defendant had written to the victim was not reversible error where the letter was cumulative of witnesses' testimony that defendant loved the victim and valued her role in his life).

For the reasons set forth above, we affirm the trial court's order denying Crane's motion for a new trial.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 23, 2009 —
RECONSIDERATION DENIED OCTOBER 14, 2009.

*Manning & Leipold, Calvin A. Leipold, Jr.*, for appellant.
*Daniel J. Porter, District Attorney, Dawn H. Taylor, Assistant District Attorney*, for appellee.