## A11A1300. WHITE v. THE STATE.
(718 SE2d 335)

MILLER, Presiding Judge.

Following a jury trial, Kelvin White, Jr., was convicted of voluntary manslaughter (OCGA § 16-5-2 (a)), two counts of aggravated assault (OCGA § 16-5-21 (a) (2)), two counts of possession of a

---

firearm during the commission of a crime (OCGA § 16-11-106 (b) (1)), one count of carrying a concealed weapon (OCGA § 16-11-126 (b)), and one count of possession of a firearm by a convicted felon (OCGA § 16-11-131 (b)). White moved for a new trial, but the trial court denied his motion. On appeal, White contends that (1) the evidence was insufficient to sustain his conviction; (2) the trial court gave an improper charge on the issue of knowledge; and (3) his trial counsel was ineffective in several respects. We discern no error and affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt.

(Citations and punctuation omitted.) *Fogerty v. State*, 304 Ga. App. 546 (1) (696 SE2d 496) (2010).

So viewed, the trial evidence shows that, on April 30, 2008, White and his girlfriend visited the Clayton County residence belonging to the girlfriend's mother. When White and his girlfriend arrived at the residence, they were greeted by one of the victims, Terrell Favors.

While White's girlfriend went to a different part of the house to talk to her mother, White asked Terrell to talk with him outside. Upon going outside, White and Terrell engaged in a heated argument concerning the relationship between White and his girlfriend.

During the argument, Terrell's brother, Tybias Favors, arrived at the house with his girlfriend. According to Terrell, Tybias observed the argument, but did not get involved. Terrell's argument with White became more "heated" with the two men standing "face-to-face." Terrell went inside the house to tell White's girlfriend about the argument and to get her to intervene and "straighten [it] out."

When Terrell returned outside, he and White continued the argument and were preparing for a physical altercation. White then pulled out a gun and shot Terrell and Tybias. When Tybias dropped to the ground, White put a gun to his head and threatened to kill him. White subsequently fled, and Tybias ultimately died from the gunshot wound.

In his defense, White claimed that Terrell instigated the argument and threatened to kill him. During the argument, Terrell allegedly said that he had "something for [White]" and ran inside the residence. According to White, when he and Terrell were

arguing, Tybias was "creeping behind him" and yelling at him. White testified that when Terrell went inside the residence, he asked Tybias to move his car so that White could leave, but Tybias refused.

White also testified that he tried to convince Terrell not to fight, but that Terrell and Tybias "rushed" him. White stated that Terrell appeared to reach under his shirt to grab a pistol. White testified that he feared for his life because he believed that Terrell had a weapon based upon seeing a "print" or bulge under Terrell's shirt and Terrell's statement that he "had something for him." White conceded that he did not actually see Terrell or Tybias with a firearm, but claimed that, as he was leaving, he saw Terrell give Tybias's girlfriend a black object that she placed into a car. Law enforcement officers conducted a search of the residence, but no firearms were found at the scene.

White was subsequently arrested, charged, and convicted of the criminal offenses related to the incident.

1. White contends that the evidence was insufficient to sustain his conviction. We disagree. Based on the evidence set forth above, the jury was authorized to find White guilty of each of the offenses. See OCGA §§ 16-5-2 (a); 16-5-21 (a) (2); 16-11-106 (b) (1); 16-11-126 (b); 16-11-131 (b).

(a) White nevertheless argues that the State's evidence failed to prove venue. His argument is without merit.

"Generally, a criminal action must be tried in the county in which the crime was committed, and the State may establish venue by whatever means of proof are available to it, including direct and circumstantial evidence." (Citations and footnote omitted.) *Scott v. State*, 302 Ga. App. 111, 112 (1) (a) (690 SE2d 242) (2010). Here, the witness testimony showed that Tybias was shot at a residence located in Clayton County. White's claim that the State failed to show that certain cities were included in Clayton County is inapposite. To establish venue, the State needed only to show that the events occurred within the county, which it did.

(b) White also contends that his voluntary manslaughter conviction was against the weight and sufficiency of the evidence. In particular, he contends that his conviction was precluded since the evidence showed that he acted in self-defense. We disagree.

> OCGA § 5-5-21 specifically empowers trial courts with the authority to weigh the evidence. It provides that a trial judge, in the exercise of a sound discretion, may grant a new trial in cases where the verdict may be *decidedly and strongly against the weight of the evidence* even though there may appear to be some slight evidence in favor of the finding. On a motion for new trial alleging this ground, the

court sits as a "thirteenth juror." The motion is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.

(Citations and punctuation omitted.) *Rutland v. State*, 296 Ga. App. 471, 476 (3) (675 SE2d 506) (2009).

The trial court considered White's arguments in the context of OCGA § 5-5-21, but ultimately decided this claim against him. We discern no error.

"When a defendant presents sufficient evidence raising a claim of self-defense, the State must disprove that defense beyond a reasonable doubt." (Citations omitted.) *Richards v. State*, 288 Ga. App. 814 (655 SE2d 690) (2007).

Under OCGA § 16-5-2 (a),

[a] person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]

Evidence of voluntary manslaughter may be found in a situation which arouses the sudden passion in the person killing so that, rather than defending himself, he wilfully kills the attacker, albeit without malice aforethought, when it was not necessary for him to do so in order to protect himself.

(Citations and punctuation omitted.) *Crane v. State*, 300 Ga. App. 450, 452 (1) (685 SE2d 314) (2009). Furthermore, "heated arguments, physical beatings and fear of some danger present sufficient provocation for a voluntary manslaughter conviction." (Citations and punctuation omitted.) Id.

Here, the evidence establishing that White, Terrell, and Tybias had engaged in a heated argument, which escalated to preparations for a mutual, physical altercation, was sufficient to sustain the voluntary manslaughter conviction. In particular, the evidence shows that White and Terrell were "face-to-face" and ready to fight. Given this heated exchange and White's belief that he was in serious danger based on Terrell's statement that he "had something for [White]" and Tybias's lurking presence, there was sufficient provo-

cation to excite the passion necessary for voluntary manslaughter. *Crane*, supra, 300 Ga. App. at 452.

Notwithstanding White's argument to the contrary, his self-defense claim did not preclude his conviction. Even if White was authorized to use some force to defend himself, he could not use excessive force. OCGA § 16-3-21 (a) provides:

> A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

The jury was authorized to reject White's claim of self-defense and conclude that he "was so influenced and excited that he reacted passionately rather than simply to defend himself" when he shot an unarmed Tybias. (Punctuation and footnote omitted.) *Williams v. State*, 245 Ga. App. 670, 671 (1) (538 SE2d 544) (2000); see also *Roper v. State*, 281 Ga. 878, 880 (1) (644 SE2d 120) (2007) (witness credibility is for the jury to decide, as is the question of justification; therefore the jury is free to reject a claim that defendant acted in self-defense); *Thomas v. State*, 296 Ga. App. 231, 233 (1) (674 SE2d 96) (2009) (evidence showing that the victim was unarmed at the time of the incident authorized the jury to conclude beyond a reasonable doubt that defendant was not justified in using deadly force).

Since there was sufficient evidence of provocation at the time of White's shooting of an unarmed individual, the court did not err in refusing to grant White's motion for a new trial on this basis. *Rutland*, supra, 296 Ga. App. at 476 (3).

2. White further argues that the trial court gave an improper jury charge on the issue of knowledge. Again, we discern no error.

Here, although White contends that the trial court should have given his requested pattern charge on the issue of knowledge, the record fails to show that he requested any charge on this issue. Specifically, White did not request a jury charge on the issue of knowledge either in writing or orally, and there was no discussion of a charge on knowledge at the charge conference. Additionally, after the trial court charged the jury, White did not object to the court's

omission of the charge on the issue of knowledge.

A defendant, who was tried after the effective date of the 2007 amendment to OCGA § 17-8-58, waives any challenge to a jury charge when he fails to specifically object at the conclusion of the jury charge. See OCGA § 17-8-58 (b) (providing that a defendant's failure to object precludes appellate review unless the challenged jury charge constitutes plain error which affects his substantial rights); *Collier v. State*, 288 Ga. 756, 758-759 (4) (707 SE2d 102) (2011) (holding first that the failure to object results in a waiver, and alternatively reasoning that there was no plain error). When plain error review is appropriate, such error "is that which is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding." (Citations and punctuation omitted.) *Rogers v. State*, 247 Ga. App. 219, 226 (9) (543 SE2d 81) (2000). Plain error is that "which is obvious and affects the appellant's substantial rights and where exceptional circumstances make it necessary to avoid a clear miscarriage of justice." (Citations and punctuation omitted.) Id. at 227 (9).

Here, White's failure to object to the lack of a jury instruction on knowledge results in a waiver of that claim. See *Collier*, supra, 288 Ga. at 758-759 (4). Notwithstanding White's waiver of this asserted error, we find that the trial court's charge, when read and considered as a whole, did not mislead the jury. See *Gathuru v. State*, 291 Ga. App. 178, 179 (1) (661 SE2d 233) (2008). "[W]here a [jury] charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict [which is] amply authorized by the evidence." (Citation, punctuation and footnote omitted.) *McWilliams v. State*, 287 Ga. App. 585, 588 (651 SE2d 849) (2007).

The charge on knowledge that White now asserts should have been given reads as follows:

> Knowledge on the part of the defendant that the crime of _____ was being committed and that the defendant knowingly and intentionally participated in or helped in the commission of such crime, must be proved by the State beyond a reasonable doubt.
>
> If you find from the evidence in this case that the defendant had no knowledge that a crime was being committed or that the defendant did not knowingly and intentionally commit, participate, or help in the commission of

(and was not a conspirator in) the alleged offense, then it would be your duty to acquit the defendant.

On the other hand, should you find, beyond a reasonable doubt, that the defendant had knowledge that the crime of _____ was being committed and that the defendant knowingly and intentionally participated or helped in the commission of it, then you would be authorized to convict the defendant.

Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.43.10 (2007).

White has not, however, established that the requested charge was an applicable instruction. The above instruction is typically given when there are multiple individuals charged with committing, or aiding in the commission of, a crime, such that an accused's knowledge of a co-defendant's action is relevant, not where, as here, there is only one perpetrator. See, e.g., *Garland v. State*, 311 Ga. App. 7, 8 (1) (714 SE2d 707) (2011) (knowledge charge given when two offenders went to trial and one pled guilty); *Eckman v. State*, 274 Ga. 63, 66-68 (3) (a) (548 SE2d 310) (2001) (involving two collaborators who proceeded to trial separately); *Leigh v. State*, 223 Ga. App. 726, 727, 731 (3) (478 SE2d 905) (1996) (knowledge charge given when one individual proceeded to trial after two co-defendants pled guilty). Because the charge on knowledge was not applicable to the case, the trial court did not err in failing to provide it. See generally *Leonard v. Miller*, 207 Ga. App. 602, 604 (3) (428 SE2d 646) (1993) (holding that a court does not err by refusing to give an inapplicable charge).

Even if the charge on knowledge were applicable to this case, White's claim still fails. In its charge to the jury, the trial court read the counts against White, explained that the State was required to prove every element of the offense, including intent, beyond a reasonable doubt, and read the elements for each offense against White. Additionally, the court charged on intent in general, and charged that there is no presumption of criminal intent. The court also charged on affirmative defenses, and instructed the jury that it was the State's burden to disprove beyond a reasonable doubt that a defendant's actions were not justified. As a whole, the charge given in this case covered substantially the same principles as the charge requested by White, and therefore the charge on knowledge was unnecessary. *Copeland v. State*, 263 Ga. App. 776, 780 (2) (589 SE2d 319) (2003) (holding that the trial court did not err in failing to give a jury charge on knowledge when the charge given to the jury, in their totality, substantially covered the principles in the requested charge). Consequently, White has not established that his substantial

rights were affected because he has not demonstrated that the omission of the pattern jury charge resulted in a miscarriage of justice. See *Rogers*, supra, 247 Ga. App. at 226 (9).

3. In his last enumeration of error, White contends that his trial counsel was ineffective in several respects. To prevail on a claim of ineffective assistance of counsel, White must show both that trial counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985).

To meet the first prong of this test, he must overcome the strong presumption that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." (Citation omitted.) *Smith*, supra, 253 Ga. at 783 (1). The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. To meet the second prong, White must demonstrate there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 784 (1). "In reviewing a lower court's determination of a claim of ineffective assistance of counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo." (Citations omitted.) *Boatright v. State*, 308 Ga. App. 266, 267 (1) (707 SE2d 158) (2011). Applying these standards, we turn to address White's claims.

(a) White first argues that his counsel was ineffective for failing to challenge the validity of the indictment because it did not have a "True Bill" on it, the grand jury foreman did not sign the indictment, it was not received in "open court" from a sworn grand jury bailiff and then filed in the clerk's office, and the clerk of the court also did not sign the indictment.

OCGA § 17-7-54 governs the form of an indictment, and any indictment that "states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct." There is no express requirement that the indictment contain a written statement that it was received in "open court," or that it be signed. OCGA § 17-7-54.

Here, the indictment as filed in the record shows that it is a "True Bill," and was signed by the grand jury foreperson. Additionally, it was filed with the clerk's office with the clerk of the court's name prior to White's arraignment, where he and his attorney signed the indictment.

In any event, even if White was able to show that his counsel was deficient for failing to challenge an imperfect indictment, he is unable to establish prejudice.

> A defendant is entitled to be tried on an indictment that is perfect in form. And, if an indictment is imperfect, a defendant may file a special demurrer challenging the form of the indictment. If no special demurrer is filed, any error in the indictment's form is waived. If the demurrer is granted, the trial court quashes the indictment. However, the quashing of an indictment merely bars trial on the flawed indictment; it does not bar the State from reindicting the defendant. Thus, even if [White's] attorney had filed a demurrer, it would not have prevented the State from reindicting and trying [White]. And [White] does not argue that the imperfect indictment prejudiced his defense in any way. Under these circumstances, [White] has failed to show that he was prejudiced by his attorney's failure to file such demurrer.

(Citation and punctuation omitted.) *Cuzzort v. State*, 307 Ga. App. 52, 56-57 (2) (b) (703 SE2d 713) (2010); see also *Williams v. State*, 257 Ga. App. 206 (570 SE2d 645) (2002) (holding that a defendant's failure to show that he was prejudiced by an alleged defect in the indictment does not require reversal, because it would be a mere windfall that contributed nothing to the administration of justice).

(b) White also argues that his trial counsel was ineffective for failing to address the State's requirement to establish venue. Based on our discussion in Division 1 (a) above, counsel did not perform deficiently because the State clearly established venue. Therefore, counsel's failure to object cannot constitute grounds for ineffective assistance. See *Mitchell v. State*, 287 Ga. App. 517, 519 (1) (a) (651 SE2d 821) (2007) ("trial counsel's failure to pursue a futile objection does not constitute ineffective assistance") (citation and punctuation omitted).

(c) White contends that his trial counsel erred by failing to follow proper procedures to introduce evidence, in the form of an examining psychologist's notes, that he suffered from post-traumatic stress disorder ("PTSD"). He asserts, without explanation, that the PTSD evidence was important to the guilt/innocence determination.

In his motion for new trial, White suggested that a psychologist evaluated him and opined that he suffered from a mental disease, namely PTSD. He did not, however, attach a copy of the psychologist's notes, proffer any testimony, or otherwise provide any information to support his claim. As a result, we cannot review this claim.

*Sutton v. State*, 261 Ga. App. 860, 864 (2) (b) (583 SE2d 897) (2003) (unable to review a claim that trial counsel was ineffective for failing to request a continuance to secure certain medical records when the subject records were not included in the record).

(d) Finally, White contends that his trial counsel was ineffective for failing to request the jury charge regarding knowledge.

White's ineffective assistance claim fails because he has not shown prejudice from the alleged error. As we held in Division 2 above, the charge on knowledge was unnecessary because it was not applicable to the case and, even if it was pertinent, the trial court's charge covered substantially the same principles as the charge requested by White. *Copeland,* supra, 263 Ga. App. at 780 (2) (holding that it was not necessary for the trial court to give a jury charge on knowledge when the charge given, in its totality, substantially covered the principles in the requested charge). As such, no basis for reversal has been shown. See *Laing v. State*, 304 Ga. App. 15, 20 (3) (b) (695 SE2d 363) (2010) (holding that a defendant did not establish prejudice because the charge given substantially covered the principle of the suggested charge, and therefore, there was no reversible error from counsel's failure to request the suggested charge).

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED NOVEMBER 7, 2011.

*Thomas S. Sunderland*, for appellant.
*Tracy Graham-Lawson, District Attorney, Travis J. Meyer, Assistant District Attorney*, for appellee.