**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 14, 2020**

# In the Court of Appeals of Georgia

A19A1839. HAMLETTE v. THE STATE.

A19A2176. HAMLETTE v. THE STATE.

DILLARD, Presiding Judge.

Following a joint trial, a jury convicted both Tucker Hamlette and his brother, Timothy Hamlette, on one count each of voluntary manslaughter and aggravated assault with a deadly weapon. Both brothers now appeal, and because their cases arise out of the same set of facts, we have consolidated their appeals for review. In Case No. A19A1839, Tucker Hamlette argues that the trial court erred in instructing the jury on voluntary manslaughter as a lesser-included offense of felony murder, denying his claim of ineffective assistance of counsel, and failing to merge his convictions for sentencing. In Case No. A19A2176, Timothy Hamlette challenges the sufficiency of the evidence supporting his convictions and contends that the trial

court erred in denying the claim in his motion for new trial that the verdicts were against the weight of the evidence and contrary to the principles of justice and equity, and in similarly failing to merge his convictions for sentencing. For the reasons set forth *infra*, we affirm the convictions in both cases, but because those convictions should have merged for purposes of sentencing, we vacate both sentences and remand for resentencing.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that on the night of June 19, 2015, Stephant Lewis and some friends went to a nightclub in an area of Folkston known as "the Sticks." While there, Lewis encountered his cousins, Timothy and Tucker Hamlette, as well as some of their friends. Sometime after 9:00 p.m., Lewis and Timothy Hamlette got into an argument. The argument quickly became heated and escalated into a fight, in which Timothy, Tucker, and several of their friends knocked Lewis to the ground. And in an attempt to defend himself, Lewis pulled a knife and cut Timothy, who had been on top of him.

---

[1] *See Patch v. State*, 337 Ga. App. 233, 235 (786 SE2d 882) (2016) (noting that on appeal from a criminal conviction, we view the evidence "in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent" (punctuation omitted)).

2

Lewis then got to his feet, raised both of his hands to the air in a "surrendering" motion, and started walking toward his girlfriend's car, which was parked just across the street. But as he did, Timothy and Tucker pulled handguns and began firing at him.

As the shots rang out, Lewis—as well as numerous other people on the crowded street—tried to flee, but three bullets struck him, and he fell into a nearby ditch. Immediately, both Hamlettes fled the scene, and Lewis's friends put him in a truck to take him to the hospital. But within minutes, they met an ambulance that had been dispatched to the scene. The paramedics then placed an unresponsive Lewis into the ambulance and transported him to the hospital. Nevertheless, once there, attempts to resuscitate Lewis were unsuccessful, and he was pronounced dead.

Subsequently, the State charged both Timothy and Tucker Hamlette, via the same indictment, with one count of felony murder predicated on aggravated assault and one count of aggravated assault with a deadly weapon. Ultimately, the case proceeded to a joint trial, in which the State presented the foregoing evidence. In addition, a GBI forensic pathologist—who performed the autopsy on Lewis—testified that his cause of death was due to three gunshot wounds to his back, thigh, and calf,

respectively, and that the wounds were caused by two different caliber bullets. A GBI firearms expert also testified that several .22 caliber and .380 caliber shells were recovered from the crime scene. Finally, a GBI special agent testified regarding her recorded interviews—which were played for the jury—with Timothy, Tucker, and a third brother, Tony Hamlette, who was a witness to the shooting. At the trial's conclusion, the jury found both Timothy and Tucker Hamlette guilty of voluntary manslaughter, as a lesser-included offense of felony murder, and aggravated assault.

Thereafter, Timothy filed a motion for new trial. And after obtaining new counsel, Tucker also filed a motion for new trial, in which he alleged, *inter alia*, that his trial counsel rendered ineffective assistance. Subsequently, the trial court conducted a hearing on the Hamlettes' motions, during which Tucker's trial counsel testified regarding his representation. At the conclusion of the hearing, the trial court took the issues under advisement, but shortly thereafter, it issued orders denying both Hamlettes' motions. These appeals follow.

*Case No. A19A1839*

1. In his first enumeration of error, Tucker Hamlette contends that the trial court erred by instructing the jury on voluntary manslaughter as a lesser-included

offense of felony murder, arguing that evidence did not support such an instruction. This contention lacks merit.

During the charge conference, although Tucker informed the trial court that he was not requesting a jury instruction on voluntary manslaughter, he explicitly stated that he had no objection to his brother, Timothy, requesting such a charge. But OCGA § 17-8-58 requires that "[a]ny party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate."[2] And the failure to so object precludes "appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects the substantial rights of the parties."[3] In such cases, as the Supreme Court of Georgia has explained, "the proper inquiry is whether the instruction was erroneous, whether it

---

[2] OCGA § 17-8-58 (a).

[3] OCGA § 17-8-58 (b); *see also Alvelo v. State*, 290 Ga. 609, 614 (5) (724 SE2d 377) (2012) (holding that OCGA § 17-8-58 (b) requires an appellate court to review for plain error an alleged jury-instruction error to which no objection was raised at trial); *Sutton v. State*, 338 Ga. App. 724, 730-31 (2) (791 SE2d 618) (2016) (same).

was obviously so, and whether it likely affected the outcome of the proceedings."[4] Consequently, because Tucker failed to object to this jury charge, our review is limited to consideration in this regard.[5]

Turning to our review of the specific instruction at issue, it is well established that "[j]ury charges must be adjusted to the evidence in the case."[6] But to authorize a jury instruction on a subject, "there need only be produced at trial slight evidence supporting the theory of the charge."[7] And here, the trial court instructed the jury on voluntary manslaughter as follows:

---

[4] *Alvelo*, 290 Ga. at 615 (5) (punctuation omitted); *accord Sutton*, 338 Ga. App. at 730-31 (2).

[5] *See* OCGA § 17-8-58 (b); *see also State v. Alvarez,* 299 Ga. 213, 214 (1) (790 SE2d 66) (2016) (noting that when trial counsel fails to object to a jury charge, appellate courts must review the issue under the plain-error doctrine); *Sutton*, 338 Ga. App. at 730-31 (2) (same); *King v. State*, 317 Ga. App. 834, 836-37 (1) (733 SE2d 21) (2012) (same).

[6] *Johnson v. State*, 350 Ga. App. 478, 484 (829 SE2d 652) (2019) (punctuation omitted); *see Nations v. State*, 345 Ga. App. 92, 100 (3) (812 SE2d 346) (2018) ("It is axiomatic that a jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law." (punctuation omitted)); *Reid v. State*, 341 Ga. App. 604, 613 (5) (802 SE2d 42) (2017) (same).

[7] *Jones v. State*, 287 Ga. 770, 771 (2) (700 SE2d 350) (2010) (punctuation omitted); *accord Johnson*, 350 Ga. App. at 484.

After consideration of all the evidence, before you would be authorized to return a verdict of guilty of felony murder, you must first determine whether mitigating circumstances, if any, would cause the offense to be reduced to voluntary manslaughter. A person commits voluntary manslaughter when that person causes the death of another human being under circumstances that would otherwise be murder if that person acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. If there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, which the jury in all cases shall decide, the killing may be attributed to revenge and be punished as for murder. In that connection, I charge you that the burden of proof is upon the State to prove beyond a reasonable doubt that the offense is so mitigated. Provocation by words alone will in no case justify such excitement of passion sufficient to free the accused from the crime of murder or to reduce the offense to manslaughter when the killing is done solely in resentment of such provoking words. Words accompanied by menaces, though the menaces do not amount to an actual assault, may in some instances be sufficient provocation to excite a sudden, violent, and irresistible passion in a reasonable person. And if a person acts in such passion or any spirit of revenge, then such would constitute voluntary manslaughter.

Tucker claims that this instruction constituted plain error, specifically arguing that there was no evidence he fired a gun at Lewis, and, thus, he should either have

7

been found guilty of felony murder predicated upon being a party to aggravated assault or acquitted outright. But the Supreme Court of Georgia has held that "[o]n the trial of a murder case, if there be any evidence, however slight, as to whether the offense is murder or voluntary manslaughter, instruction as to the law of both offenses should be given the jury."[8] Indeed, our Supreme Court has recognized that a felony murder conviction would "be improper [when] the jury found sufficient provocation or passion with respect to the act that caused the killing to support a conviction for voluntary manslaughter."[9] Thus, when there is evidence that supports a voluntary manslaughter conviction, the jury "should be instructed to consider that evidence before it makes its decision regarding felony murder."[10] And here, the State presented evidence that immediately following a fight, in which both Tucker and Timothy were involved and in which Lewis cut Timothy, both Tucker and Timothy Hamlette fired handguns at Lewis. In fact, the State also presented evidence that two

---

[8] *Scott v. State*, 291 Ga. 156, 157 (2) (728 SE2d 238) (2012) (punctuation omitted).

[9] *Hayes v. State*, 279 Ga. 642, 643-44 (2) (619 SE2d 628) (2005); *see Edge*, 261 Ga. 865, 866 (2) (414 SE2d 463) (1992) (holding that if the jury finds voluntary manslaughter, it necessarily finds the felonious assault was mitigated by provocation, and committed without the mens rea essential to impute malice to the killing).

[10] *Hayes*, 279 Ga. at 644 (2).

different caliber bullets struck Lewis. Given these circumstances, the trial court did not err by instructing the jury on voluntary manslaughter as such instruction was applicable to both defendants.[11]

2. Tucker Hamlette also contends that the trial court erred in denying a claim that his trial counsel rendered ineffective assistance by failing to object when, during closing argument, the State allegedly made an improper remark regarding future dangerousness. We disagree.

In order to evaluate Tucker's claims of ineffective assistance of counsel, we apply the two-pronged test established by the Supreme Court of the United States in *Strickland v. Washington*,[12] which requires Tucker to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced her that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial

---

[11] *See Morris v. State*, 276 Ga. App. 775, 779 (4) (624 SE2d 281) (2005) (holding that trial court properly charged the jury, despite defendant's objection, on voluntary manslaughter as lesser-included offense of felony murder in light of evidence that defendant's shooting of victim was a result of victim's earlier aggression toward defendant's co-defendants); *Boone v. State*, 234 Ga. App. 373, 374 (3) (506 SE2d 884) (1998) (holding that charge on voluntary manslaughter was proper, despite defendant's objection that evidence supported only either murder or self-defense, because evidence of adulterous conduct provides sufficient provocation to authorize such charge).

[12] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

would have been different."[13] In doing so, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[14] In fact, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[15] And importantly, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would have followed such a course."[16] Furthermore, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are

---

[13] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III) (noting that a claim for ineffective assistance has two components: a showing of deficient performance and a showing of prejudice); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012) ("[F]irst, appellant must show that counsel's performance was deficient; second, he is required to show that he was prejudiced by counsel's deficient performance." (punctuation omitted)).

[14] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[15] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016).

[16] *Id.*

reviewed *de novo*."[17] Bearing this analytical framework in mind, we turn to Tucker's specific claim of error.

In this regard, near the end of the State's closing argument, the prosecutor remarked as follows:

> Y'all are sitting here as the conscious of this county. This thing we call civilization is a thin veneer, very thin. It's a thin layer of anarchy, criminality, revenge, vendetta, going to shoot him, going to shoot some fellow in the back. If y'all want to live like that knock yourselves out. Turn him loose. Let them go. Their guns are still out there. I guarantee you they know where to find them. If you don't want to live like that, if you think we ought to live under the rule of law, like civilized people, then I ask you to convict them – guilty of felony murder, guilty of aggravated assault as charged. Thank you.

Tucker argues that these remarks—taken as a whole—constituted an improper comment by the State's prosecutor attributing future dangerousness to him and his brother and that his counsel should have objected. But again, we disagree.

To be sure, under present authority, an argument that a defendant "represents a future danger to society is impermissible when a jury is determining guilt or

---

[17] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014).

11

innocence."[18] This is because such remarks are "irrelevant to the question of whether, under the facts introduced into evidence, the defendant is guilty beyond a reasonable doubt of the crime charged."[19] But general appeals to enforce the criminal law for the safety of the community have "long been held by this [State's appellate courts] to be within the bounds of permissible argument."[20] And here, the alleged offending remarks did not specifically assert that Tucker and his brother represented a future danger, but rather, implored the jury to not condone the "revenge" or "vendetta"

---

[18] *Stroud v. State*, 272 Ga. 76, 77 (2) (526 SE2d 344) (2000); *see Sterling v. State*, 267 Ga. 209, 210 (2) (477 SE2d 807) (1996) (holding that State's argument regarding defendant's future dangerous during closing argument of guilt-innocence phase of trial was improper); *Kemp v. State*, 314 Ga. App. 730, 732 (3) (726 SE2d 447) (2012) ("It is highly improper for a prosecutor to argue during the guilt-innocence phase of a criminal trial that if found not guilty, a defendant poses a threat of future dangerousness").

[19] *Wyatt v. State*, 267 Ga. 860, 864-65 (2) (b) (485 SE2d 470) (1997); *accord Williams v. State*, 261 Ga. App. 511, 516 (3) (583 SE2d 172) (2003).

[20] *Smith v. State*, 296 Ga. 731, 737 (2) (c) (770 SE2d 610) (2015); *see Spencer v. State*, 287 Ga. 434, 439-40 (4) (696 SE2d 617) (2010) (noting that a prosecutor may argue to the jury to convict for the safety of the community); *Gibson v. State*, 283 Ga. 377, 381 (8) (659 SE2d 372) (2008) (holding that it was appropriate for prosecutors to urge the jury to speak on behalf of the community and rid it of robbers and murderers); *Emmanuel v. State*, 300 Ga. App. 378, 381 (4) (685 SE2d 361) (2009) (holding that the State may appeal to the jury to convict for the safety of the community); *Hines v. State*, 246 Ga. App. 835, 837 (3) (541 SE2d 410) (2000) (same).

based justice in which the defendants engaged but, instead, enforce the law for "the safety of the community."[21] Thus, as the State's closing argument was not improper, trial counsel's failure to object to it is not evidence of ineffective assistance.[22] Accordingly, the trial court did not err in denying Tucker's claim that his trial counsel rendered ineffective assistance.

3. Tucker Hamlette further contends that the trial court erred by failing to merge his voluntary manslaughter and aggravated-assault convictions for sentencing purposes. In its appellate brief, the State acknowledges that the convictions should

---

[21] *Smith*, 296 Ga. at 737 (2) (c); *see McClain v. State*, 267 Ga. 378, 385 (4) (a) (477 SE2d 814) (1996) ("A prosecutor may appeal to the jury to convict for the safety of the community or to send a message to others that criminal activities will be punished.").

[22] *See Smith*, 296 Ga. at 736-37 (2) (c) & n.6 (holding that prosecutor's remarks during closing argument that "crime is a cancer that eats away at society," and that the jury should "stand in the way of injustice," reflected the State's theory that the motive for the crime was vigilante justice and generally and properly appealed to the jury to enforce the law for the safety of the community, and therefore, trial counsel's failure to object did not amount to ineffective assistance); *Spencer*, 287 Ga. at 439-40 (4) (holding that prosecutor's statement during closing argument that "[t]his is your community and these are your streets, and you can say yes to this or you can say no to this," was not an improper reference to the defendant's future dangerousness, and thus, defendant's trial counsel did not render ineffective assistance by failing to object).

have merged, and we agree. Consequently, we vacate his sentence and remand to the trial court for resentencing.

The question of whether offenses merge is a legal question that we review *de novo*.[23] When a defendant is convicted of multiple crimes based upon the same act, "the principle of factual merger operates to avoid the injustice."[24] Under Georgia law, one crime is included in another when

> (1) [i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged; or

> (2) [i]t differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.[25]

---

[23] *Morris v. State*, 340 Ga. App. 295, 312 (7) (797 SE2d 207) (2017); *accord Haynes v. State*, 322 Ga. App. 57, 60 (2) (743 SE2d 617) (2013).

[24] *Morris*, 340 Ga. App. at 312 (7) (punctuation omitted); *see also Regent v. State*, 299 Ga. 172, 175 (787 SE2d 217) (2016) ("While an accused may be *prosecuted* for more than one crime arising out of the same criminal conduct, he may not be *convicted* of more than one crime arising out of the same criminal conduct [when] one crime is included in the other.").

[25] OCGA § 16-1-6 (1)-(2).

To answer the question of whether offenses merge, the Supreme Court of Georgia has adopted the "required evidence" test set forth by the Supreme Court of the United States to resolve these situations.[26] Thus, when determining whether convictions for multiple crimes merge for purposes of sentencing, "[t]he applicable rule is that [when] the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[27]

In this matter, a separate judgment of conviction and sentence for aggravated assault would be authorized only if the indictment averred, and the State proved, that Tucker Hamlette "commit[ted] an aggravated assault independent of the act which caused the victim's death."[28] But the indictment charged Tucker with felony murder by alleging that he "did then and there unlawfully, while in the commission of a felony, to-wit: Aggravated Assault, did cause the death of Stephant Lewis, a human

---

[26] *Drinkard v. State*, 281 Ga. 211, 212, 214 (636 SE2d 530) (2006); *accord Morris*, 340 Ga. App. at 313 (7); *see also Blockburger v. United States*, 284 U.S. 299, 304 (52 SCt 180, 76 LEd 306) (1932).

[27] *Drinkard*, 281 Ga. at 215 (punctuation omitted) (quoting *Blockburger*, 284 U.S. at 304).

[28] *Coleman v. State*, 286 Ga. 291, 295 (3) (687 SE2d 427) (2009); *accord Muckle v. State*, 307 Ga. App. 634, 639 (2) (705 SE2d 721) (2011).

being, irrespective of malice, by shooting him with a . . . handgun . . . ." It then charged him with aggravated assault for the exact same conduct. And although the jury convicted Tucker of voluntary manslaughter as a lesser-included offense of felony murder, it, nevertheless, "follows that [Tucker Hamlette's] conviction for aggravated assault merged as a matter of fact into [his] conviction for voluntary manslaughter."[29] Accordingly, we vacate the conviction and sentence for aggravated assault and remand the case for resentencing with direction to merge the aggravated-assault count into the voluntary manslaughter count.[30]

---

[29] *Muckle*, 307 Ga. App. at 639 (2); *see Williams v. State*, 300 Ga. App. 305, 306 (2) (684 SE2d 430) (2009), *reversed on other grounds by*, 288 Ga. 7 (700 SE2d 564) (2010) (concluding that "the trial court properly held that the aggravated assault conviction merged with that for voluntary manslaughter"); *Hayles v. State*, 287 Ga. App. 601, 602 (651 SE2d 860) (2007) (noting that aggravated-assault conviction merged into voluntary manslaughter conviction).

[30] *See Muckle*, 307 Ga. App. at 639 (2); *see also Mikell v. State*, 286 Ga. 722, 724-25 (3) (690 SE2d 858) (2010) (holding that because aggravated assault upon victim was the same act that caused victim's death, defendant's murder and aggravated assault convictions should have merged for purposes of sentencing and remanding for resentencing).

4. In his second enumeration of error, which we nonetheless address first, Timothy Hamlette contends that the evidence was insufficient to support his convictions. This contention lacks merit.

It is axiomatic that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[31] And in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[32] Thus, the jury's verdict will be upheld so long "as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[33] With these guiding principles in mind, we now address Timothy Hamlette's contention.

---

[31] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[32] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[33] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

Under OCGA § 16-5-2 (a), "[a] person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person . . . ." Specifically, evidence of voluntary manslaughter "may be found in a situation which arouses the sudden passion in the person killing so that, rather than defending himself, he wilfully kills the attacker, albeit without malice aforethought, when it was not necessary for him to do so in order to protect himself."[34] And heated arguments, physical beatings, and fear of some danger "present sufficient provocation for a voluntary manslaughter conviction."[35] Furthermore, under OCGA § 16-5-21 (a) (2), a person commits the offense of aggravated assault when "he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely

---

[34] *White v. State*, 312 Ga. App. 421, 424 (1) (b) (718 SE2d 335) (2011) (punctuation omitted).

[35] *Id.* (punctuation omitted).

18

to or actually does result in serious bodily injury[.]" Suffice it to say, intentionally firing a gun at another person, absent justification, may be "sufficient in and of itself to support a conviction of aggravated assault."[36]

Here, the evidence shows that Timothy, Tucker, and some of their friends engaged in a heated argument with Lewis that escalated into a physical altercation, in which they knocked Lewis to the ground. Additional evidence demonstrates that Lewis escaped from the fight by pulling a knife and cutting Timothy, and that Timothy and Tucker pulled handguns and fired at Lewis as he tried to walk away, with three bullets striking and ultimately killing him. Given these circumstances, the

---

[36] *Hayes v. State*, 298 Ga. 339, 343 (b) (781 SE2d 777) (2016) (punctuation omitted).

evidence sufficiently supported Timothy's conviction for voluntary manslaughter[37] and aggravated assault,[38] and we, thus, affirm those convictions.[39]

5. In two enumerations of error, which he then combines into one argument, Timothy Hamlette also maintains that the trial court erred in denying the claim in his motion for new trial that the verdicts were against the weight of the evidence and contrary to the principles of justice and equity. These contentions likewise lack merit.

---

[37] *See White*, 312 Ga. App. at 424-25 (1) (b) (affirming jury's finding that defendant reacted passionately as required to support a voluntary manslaughter conviction when evidence showed that defendant engaged in heated argument with victim's brother, which victim joined, and argument escalated to preparations for mutual physical altercation); *Crane v. State*, 300 Ga. App. 450, 452 (1) (685 SE2d 314) (2009) (holding that evidence was sufficient to find that victim's provocation excited the passion necessary to support defendant's voluntary manslaughter conviction when victim threatened to kill defendant, threw an object at defendant's vehicle, struck the vehicle's window several times, and taunted defendant to kill him).

[38] *See Walton v. State*, 303 Ga. 11, 12-13 (1) (810 SE2d 134) (2018) (holding that evidence that defendant and his accomplices shot at victim, causing his death, was sufficient to support felony murder and aggravated assault convictions); *Bashir v. State*, 350 Ga. App. 852, 854 (1) (830 SE2d 353) (2019) (holding that evidence that defendant fired shots at car carrying three victims, following verbal and physical altercations, was sufficient to support defendant's aggravated assault conviction).

[39] Although in Case No. A19A1839, Tucker Hamlette did not challenge the sufficiency of the evidence, we have reviewed the record and, as with his brother, find the evidence sufficient to enable a jury to conclude beyond a reasonable doubt that he was guilty of all the crimes of which he was convicted. *See supra* notes 37 and 38.

20

Under Georgia law, in any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may "grant a new trial before another jury."[40] In addition, the presiding judge may exercise "a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."[41] And when properly raised in a timely motion, "these grounds for a new trial—commonly known as the 'general grounds'—require the trial judge to exercise a broad discretion to sit as a 'thirteenth juror.'"[42] Importantly, in exercising that discretion, the trial judge must consider "some of the things that she cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence."[43] Furthermore, although the discretion of a trial judge to

---

[40] OCGA § 5-5-20.

[41] OCGA § 5-5-21.

[42] *White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013) (punctuation omitted); *accord Massey v. State*, 346 Ga. App. 233, 235 (2) (816 SE2d 100) (2018); *Allen v. State*, 345 Ga. App. 599, 602 (2) (814 SE2d 740) (2018).

[43] *White*, 293 Ga. at 524 (2) (punctuation omitted); *accord Massey*, 346 Ga. App. at 235-36 (2).

award a new trial on the general grounds is not boundless, "it nevertheless is, generally speaking, a substantial discretion."[44]

Here, in its order denying Timothy's motion for new trial, the trial court explicitly stated that it exercised its discretion to weigh the evidence on the general grounds under OCGA §§ 5-5-20 and 5-5-21 as a "thirteenth juror" but, nonetheless, found that the verdict was not contrary to the evidence, strongly against the weight of the evidence, or contrary to law and the principles of justice and equity. Thus, the court's order clearly indicates that it properly performed its duty to exercise its discretion and weigh the evidence in consideration of the general grounds.[45] Furthermore, a motion for new trial based on

> OCGA § 5-5-20, i.e., that the verdict is contrary to the evidence, addresses itself only to the discretion of the trial judge. Whether to grant a new trial based on OCGA § 5-5-21, i.e., that the verdict is strongly against the evidence, is one that is solely in the discretion of the trial

---

[44] *Allen v. State*, 296 Ga. 738, 740 (2) (770 SE2d 625) (2015) (citation & punctuation omitted).

[45] *See id.* at 741 (2) (holding that record indicated that trial court properly exercised its discretion under OCGA §§ 5-5-20 and 5-5-21 when it stated that it would not grant a new trial as "the thirteenth juror").

22

court, and the appellate courts do not have the same discretion to order new trials.[46]

Consequently, even when an appellant asks us to review a trial court's refusal to grant a new trial on the general grounds, we must "review the case under the standard set forth in *Jackson v. Virginia . . .* that is, if the evidence viewed in the light most favorable to the prosecution, supports the verdict or verdicts."[47] And as we held in Division 4, *supra*, under the standard set forth in *Jackson*, the evidence authorized the jury to find Timothy Hamlette guilty of the crimes of which he was convicted.[48]

6. Finally, in an enumeration identical to his brother's, Timothy Hamlette also contends that the trial court erred by failing to merge his voluntary manslaughter and aggravated-assault convictions for sentencing purposes. Given that Timothy and Tucker were jointly indicted for the same offenses, and in light of our holding in Division 3, *supra*, we agree that the trial court erred in this regard. Accordingly, we

---

[46] *Id.* (citations & punctuation omitted).

[47] *Id.* (punctuation omitted); *accord Williams v. State*, 296 Ga. 573, 574 (769 SE2d 318) (2015).

[48] *See Allen*, 296 Ga. at 741-42 (2) (holding that because the evidence was sufficient under *Jackson* to support defendant's conviction, appellate court did not have the same discretion as trial court to order a new trial under OCGA §§ 5-5-20 and 5-5-21); *Allen*, 345 Ga. App. at 603 (2) (same).

vacate the conviction and sentence for aggravated assault and remand the case for resentencing with direction to merge the aggravated-assault count into the voluntary manslaughter count.[49]

For all these reasons, we affirm Tucker and Timothy Hamlettes' convictions, but we vacate their felony sentences as to the aggravated-assault conviction and, thus, remand both cases to the trial court for resentencing.

*Judgment in both cases affirmed in part; vacated in part; and remanded for resentencing. Gobeil and Hodges, JJ., concur.*

---

[49] *See supra* notes 29 and 30.